441 A.2d 426

Ella I. RANKIN, Administratrix of the Estate of Bruce Clark Rankin, a/k/a Bruce C. Rankin, a/k/a B. C. Rankin, Deceased,

v.

William L. FISCHER and T. H. Compton, Inc.

v.

EVERETT TRUCKING INC., Appellant.

Ella I. RANKIN, Administratrix of the Estate of Bruce Clark Rankin

v.

William L. FISCHER and T. H. Compton, Inc., Appellant,

v.

EVERETT TRUCKING COMPANY.

Appeal of T. H. COMPTON, INC.

Superior Court of Pennsylvania.

Argued Nov. 13, 1980.

Filed Feb. 5, 1982.

216

C. S. Fossee, Pittsburgh, for Everett, appellant.

James A. Beinkemper, Pittsburgh, for Compton, appellant.

B. Ernest Long, Greensburg, for appellees.

Before HESTER, BROSKY and VAN der VOORT, JJ.

HESTER, Judge:

A Petition for Declaratory Judgment was filed in the lower court to determine the relative liabilities of the three defendants for payment to the plaintiff of an agreed upon sum of money. The plaintiff is the administratrix of the Estate of Bruce C. Rankin. Rankin was killed when his automobile collided with a tractor-trailer in Westmoreland County on April 25, 1973. The plaintiff filed suit against William L. Fischer (hereinafter "Fischer"), the owner and operator of the tractor-trailer unit and T. H. Compton, Inc. (hereinafter "Compton"), the lessee of the unit under a permanent year-to-year lease. Everett Trucking, Inc. (hereinafter "Everett"), was later joined as an additional defendant.

The suit was settled prior to trial. The insurance company for Compton paid 50% of the settlement figure and the

insurance company for Everett paid the balance, pending a determination by the lower court of the relative actual liability of each appellant. The lower court found both Compton and Everett liable for 50% of the damages. Compton and Everett filed this appeal of the lower court decision.

On April 25, 1973, the date of the accident, Fischer and Compton were engaged in a permanent year-to-year lease for the hauling of sand from Berkeley Springs, West Virginia to Washington, Pennsylvania. Compton had the ICC rights to haul sand between Berkeley Springs and Washington. If no load was available for hauling on the trip back to Berkeley Springs, Fischer could haul for another motor carrier, providing he acquired Compton's permission beforehand. On thirty separate occasions during 1972 and 1973, Compton's drivers acquired Compton's permission to trip lease loads of coal for Everett. Everett had a lease with H. W. Brown Coal Company (hereinafter "Brown"), for the purpose of hauling coal from Whitney, Pennsylvania to Lime Kiln, Maryland. When Everett did not have enough tractor-trailer units and drivers to satisfy Brown's demands, they would enter into trip leases with other trucking companies or individual tractor-trailer owners for the transport of Brown's coal.

On the day of the accident, Fischer had completed a haul of sand for Compton from West Virginia to Pennsylvania. Compton had no load available for Fischer's return trip, so Fischer acquired Compton's permission to haul a load of coal for Everett. At the time of the accident, Fischer was driving his unit to Whitney, Pennsylvania to pick up the load of coal. When Fischer and other Compton drivers hauled coal for Everett under these conditions, payment was made by Brown to Everett, then by Everett to Compton, then to Fischer after Compton deducted a 5% fee.

The written briefs and oral arguments presented by the appellants, Compton and Everett, form two issues to be decided by this Court. The first is whether Everett's ignorance of the fact that Fischer was driving to Whitney, Pennsylvania to pick up a load of coal from Brown at the

time of the accident, releases Everett from any responsibility for Fischer's negligence. In *Rosu v. Law, et al*, 193 F.2d 894 (1952), Law, the owner operator of the tractor-trailer unit, was engaged in a lease with Blue Star Foods, Inc., for the hauling of frozen eggs to Sunbury, Pennsylvania and New York. In addition, Law agreed to locate merchandise for the return trip and Blue Star was to receive all compensation for such return haul. On one particular occasion, Law contacted Liberty in Philadelphia after delivering the eggs for Blue Star. He made arrangements to haul goods for Liberty from Wilmington, Delaware to Kansas City, Missouri. Law picked up the lease and other documents from Liberty's office in preparation for an early start the next morning. While leaving Liberty's office in his tractor, Law collided with the decendent's car. Both Blue Star and Liberty were found liable since Long was driving under the authority of both.

Everett argues that *Rosu*, supra, is not applicable here. Law had spoken with Liberty about the particular haul to Kansas City. He had secured a written lease. We agree with Everett that Liberty was fully cognizant of the arrangements for that specific job. Everett, on the other hand, knew nothing of Fischer's journey to Whitney, Pennsylvania on April 25, 1973. No documents were prepared and no words were spoken. Everett contends that this undisputed factual distinction renders *Rosu*, supra, inapposite to the legal dispute here.

We are not predisposed to follow Everett's contention. The course of dealing between both appellants here, demonstrated that Everett was permitted to use Compton's drivers under trip leases whenever Compton had no return trip scheduled. Trip leases of this sort were arranged for Compton's drivers on 30 separate occasions during 1972 and 1973. Although Everett was unaware of the particular haul in question, they were certainly aware that hauls had and would continue to become available for Compton's drivers. The course of dealing was such that Everett was not always aware of each haul until after completion; but, Everett

approved of each haul and received financial benefit from each haul.

The second and final issue is whether the "exclusive possession" requirement found in 49 U.S.C. Section 304, infra, and its corresponding regulations at 49 C.F.R., Section 1057, infra, precludes a finding of joint liability of two motor carriers for a single negligent act committed by one tractor-trailer operator. Everett argues that the permanent year-to-year lease agreement between Compton and Fischer put Compton in a position of "exclusive possession, control and use" of Fischer's unit and, thereby, necessitates a finding that only Compton can be held liable for Fischer's negligent acts while the lease is operative. An authorized carrier may only transport goods by equipment that it does not own by, inter alia, operating under a written lease granting it the right to use the equipment. The written lease must provide that "the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease." 49 U.S.C., Section 304 (1935); 49 C.F.R., Section 1057 (1980). Everett did not enter into a written lease with either Fischer or Compton for the hauling of Brown's coal.

Compton, of course, takes the opposite position. Compton argues that they had no authority to transport material between Washington and Whitney, Pennsylvania. At the time of the accident, Fischer was travelling that route; he was not operating within the provisions of the written lease executed with Compton. Compton contends that Fischer was en route to Whitney according to arrangements made with Everett; therefore, he was travelling for the "exclusive use" of hauling coal for Everett. Compton alleges that Everett alone should be liable for Fischer's negligence.

We reject the arguments of each appellant. We adopt reasoning set forth in *Allstate Insurance Company v. Liberty Mutual Insurance Company,* 368 F.2d 121 (1966) and *Baltimore and Pittsburgh Motor Express, Inc. v. Sustrick,* 286 F.Supp. 524 (W.D.Pennsylvania, 1968). Both courts held the statutory language in 49 U.S.C., Section 304 and 49

C.F.R., Section 1057, supra, to be not determinative because such language was not necessary for the public's protection; we maintain that public policy is better served by the joint liability of both carriers here. We cannot expose the public to the indifference of a motor carrier who escapes liability simply because it has either failed to execute a written lease or has not covered the particular activity of the lessor in the written leases.

We are especially persuaded by the decision in *Rosu*, supra. Both carriers there were found liable due to the fact that the owner/operator was driving under the direction of both carriers at the time of the accident. We recognize that the directions given to the lessor in *Rosu*, supra, were more immediate and specific. There is no question that Fischer was travelling without directions for the particular haul on April 25, 1973; nevertheless, the directions given by both appellants before Fischer began hauling coal for Everett have been continual. There was no reason to reiterate them before each haul.

We are equally persuaded by the law of Delaware promulgated through *Cosmopolitan Mutual Insurance Company v. White*, 336 F.Supp. 92 (D.Delaware, 1972). Under a written lease, the motor carrier in *Cosmopolitan*, supra, had exclusive control of the owner/operator's truck. The owner/operator completed one haul for the carrier. The carrier was unable to provide a haul for the return trip. As a result, the owner/operator was travelling to Wilmington, Delaware in anticipation of picking up a load. The accident occurred during that trip. The court recognized that the owner/operator may well have been an independent contractor at the time of the accident; but, the carrier still could not escape liability. The carrier was aware and approved of return hauls for third parties. Since the purpose behind the regulations was to eliminate the abuses of independent contractors and trip leasing, the distinction between independent contractors and employees is no longer recognized. Neither Compton nor Everett can escape liability under this policy.

We affirm.