PLANET INSURANCE CO.,
Plaintiff-Appellee,

v.

TRANSPORT INDEMNITY CO.,
Defendant-Appellant.

No. 86–1615.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 12, 1987.

Decided July 27, 1987.

Bryan K. Gould and A. Bryce Dixon, Las Vegas, Nev., for defendant-appellant.

Amy Wrobel, Las Vegas, Nev., for plaintiff-appellee.

Before SNEED, ALARCON and CANBY, Circuit Judges.

CANBY, Circuit Judge:

Transport Indemnity Company appeals from a declaratory judgment in favor of Planet Insurance Company. The district court ruled that Transport is financially responsible for losses resulting from a fatal accident involving Transport's insured, an authorized interstate motor carrier. We affirm.

## INTRODUCTION

On the evening of December 30, 1982, Terry Ainsworth, an independent trucker, was driving his tractor-trailer combination when it collided with an automobile. The driver of the automobile, Larry Hoo, was killed. Ainsworth's tractor was insured by appellee Planet Insurance Company.

Ainsworth's Planet insurance policy contained a "trucker's endorsement." The endorsement excluded coverage for Ainsworth's truck when used to "carry property in any business" or "used in the business of anyone to whom the [truck] is rented." Similar exclusions are often included in policies designed to provide coverage for the trucks of owner-operators when their equipment is not being used for business. On the morning of December 30, Ainsworth leased his truck and driving services to Pacific States Transport, Inc. (PST) by means of a "trip lease." The lease provided for Ainsworth to pick up a load of wallboard in Apex, Nevada and deliver it to Southgate, California.

PST, the lessee, is an interstate motor carrier operating under authorization from the Interstate Commerce Commission (ICC). Defendant-appellant Transport Indemnity Company is PST's insurer. Transport provided insurance coverage to fulfill PST's statutory obligation to guarantee financial responsibility as a condition of ICC certification. *See* 49 U.S.C. § 10927(a)(1). Federal regulations specify minimum liability coverage and the endorsement by which such insurance is secured. 49 C.F.R. § 1043 (1985); *see id.* § 1057. The mandatory endorsement here, ICC form BMC–90, provides that nothing in the policy between PST and Transport Indemnity can relieve Transport's obligation to cover "public liability resulting from negligence in the operation, maintenance, or use of [PST's] motor vehicles subject to the financial responsibility requirements" of 49 U.S.C. § 10927. On its BMC–90 form, Transport unequivo-

cally states that its insurance is "primary."[1]

When Mr. Hoo's children and estate brought a wrongful death action in state court against PST, Ainsworth, and others, Planet sought a declaratory judgment in the district court holding Transport responsible for liabilities arising from the accident. In the district court, Ainsworth testified that the accident occurred while he was on route to pick up the load of wallboard in Apex, Nevada as required by his lease-manifest with PST. The district court determined that the trip lease was in effect and that Ainsworth was driving in the scope of his employment with PST at the time of the accident. The court further determined that the Transport policy provided primary coverage. Because the court found that Ainsworth was operating the tractor pursuant to his lease with PST, it concluded that the trucker's endorsement to Planet's policy entirely excluded coverage by Planet.

Transport asserts that the district court erred in several respects. Transport first contends that the trip lease was not in effect at the time of the accident; second, that the BMC–90 and underlying federal provisions do not control whether Transport's coverage was in effect, and that, under Nevada law, Ainsworth was not acting in the scope and course of his employment; finally, Transport contends that the exclusion in Planet's trucker's endorsement was not operative at the time of the accident, and that the endorsement is void as against public policy. We address each contention in turn.

## DISCUSSION

### I. *THE TERM OF THE TRIP LEASE*

The form and content of motor carrier leases are specified by ICC regulations. 47 Fed.Reg. 53,858, 53,859 (1982); *see, e.g.,* 49 C.F.R. § 1057 (1985); *id.* § 1057.42 (authorizing trip leasing for periods of less than 30 days from private carriers).[2] Congress

---

1. The BMC–90 endorsement otherwise reserves rights between PST and Transport as outlined by provisions of the standard policy.

2. We proceed upon the assumption that the trip leasing regulations published at 49 C.F.R. § 1057 (1985) were in force and governed this lease, executed on December 30, 1982. These

and the ICC, through authorizing statutes and regulations, intended to impose financial responsibility requirements upon authorized carriers to protect the public. *E.g., Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems, Inc.,* 423 U.S. 28, 37–39, 96 S.Ct. 229, 233–34, 46 L.Ed.2d 169 (1975); *Price v. Westmoreland,* 727 F.2d 494, 496 (5th Cir.1984); H.R. Rep. No. 2425, 84th Cong., 2d Sess. ——, *reprinted in* 1956 U.S.Code Cong. & Admin.News 4304, 4307, 4309.

The ICC requires authorized carriers to assume complete responsibility in their written leases for the operation of equipment from the time the carrier takes possession until the equipment is returned to the lessor. 49 C.F.R. § 1057.22(c)(2). A receipt must indicate the time and date that the authorized carrier takes possession of the leased equipment, and the lessor must give the lessee carrier a receipt upon redelivery to the lessor. *Id.* §§ 1057.11(b)(1) & (2); see *id.* § 1057.22(c)(2). The regulations also require the carrier to mount signs identifying the authorized carrier-lessee as the operator of the tractor for the duration of the lease. *Id.* § 1057.22(2), 1057.11(c).

PST checked the condition of lessor Ainsworth's equipment and found it acceptable upon taking possession. While the date December 30, 1982 appears on the receipt, the time was omitted. The lease-manifest specified pick-up and delivery points but did not require Ainsworth to use a particular route and did not set a time for beginning the trip. Because the accident occurred before the load was picked up and before Ainsworth affixed the carrier's

signs to his doors,[3] Transport contends he was not yet driving for PST.

Express contract language indicates, however, that the lease was in effect the morning of December 30. In a clause apparently designed to satisfy the requirements of 49 C.F.R. § 1057.22(c)(2), PST's trip-lease specified that "[t]he Lessor shall surrender full control, possession and management of said equipment to the Lessee during the term of this lease *which shall start at delivery of equipment and end with delivery of cargo at destination.*" (emphasis supplied). Although the precise time for transferring possession was not documented, Transport does not dispute that the lease was executed and that the equipment was delivered into PST's possession in North Las Vegas the morning before the accident.[4] The receipt for the equipment was delivered to Ainsworth at that same time.

██ We conclude that the lease term began when the tractor was delivered into the lessee's possession. *See* 49 C.F.R. § 1057.22(c)(2); *id.* § 1057.11(b). We would stray impermissibly from the allocation of responsibility contemplated by Congress and the ICC if we held that the lease did not come into effect until PST's signs were affixed to the truck or the load actually picked up. Thus, the district court properly concluded that the lease term began on the morning of December 30.

## II. *TRANSPORT'S INSURANCE COVERAGE*

██ Transport contends that even if the lease was in effect, Ainsworth was not, as

---

new ICC trip leasing regulations, which modify the 1982 C.F.R. provisions, apparently took effect the day of the accident. *See* 47 Fed.Reg. 53,858 (1982). The Eleventh Circuit temporarily stayed implementation of those rules on January 5, 1983, but later vacated the stay in an unpublished disposition. *Osborne Truck Line v. I.C.C.,* No. 82–8787, slip op. (11th Cir. Feb. 2, 1984); *see* 49 Fed.Reg. 9,570 (1984). The parties have not addressed the effects that the various rules might have on our result, and appear to assume that the later version applied. Examining the rules in detail, we conclude that our analysis is substantially the same under either set of provisions.

3. Because Ainsworth often trip leased with PST, the carrier had earlier issued identification signs to him for posting. ICC regulations require the carrier or its agent, rather than the lessor-operator, to affix and remove the signs at the termination of each trip lease. 49 C.F.R. § 1057.22(a), 1057.11(c)(1).

4. Although the lease specifically required Ainsworth to transport a load from Apex, Nevada to Southgate, California, the lessee's agent acknowledged receipt of the equipment in writing under the terms of the lease at North Las Vegas on December 30.

the district court found, acting in the scope of his employment with PST when the accident occurred. We reject the contention that Nevada standards of respondeat superior govern the responsibility of Transport's insured for liability arising from the accident.

We rely on the federal statutory and regulatory scheme to decide the issue of authorized carrier responsibility. *E.g., Westmoreland*, 727 F.2d at 496–97; *Rodriguez v. Ager*, 705 F.2d 1229, 1234–36 (10th Cir.1983) (discussing cases); *see Simmons v. King*, 478 F.2d 857, 867 (5th Cir.1973); *contra Wilcox v. Transamerican Freight Lines, Inc.*, 371 F.2d 403 (6th Cir.) (per curiam), *cert. denied*, 387 U.S. 931, 87 S.Ct. 2053, 18 L.Ed.2d 992 (1967). *Cf. Transport Indemnity Co. v. Carolina Casualty Insurance*, 133 Ariz. 395, 405–06, 652 P.2d 134, 144 (1982) (uniform interpretation of motor carrier insurance contracts implements federal policy to ensure authorized carrier responsibility). The special interstate character of the authorized carrier insurance industry underscores the need to refer to the federal scheme to determine when mandatory coverage comes into effect.

The BMC–90 endorsement and the federal scheme do not require that covered losses occur while the driver is in the scope of employment or acting under common-law principles of vicarious liability.[5] For purposes of determining Transport's liability, such findings by the district court are unnecessary.[6] *Westmoreland*, 727 F.2d at 496–97; *Rodriguez*, 705 F.2d at 1234–36; *Proctor v. Colonial Refrigerated Transportation, Inc.*, 494 F.2d 89, 92 (4th Cir.

1974); *Simmons*, 478 F.2d at 867; *Aetna Casualty & Surety Co. v. Fairchild*, 620 F.Supp. 1245, 1250 (D.Idaho 1985); *Cosmopolitan Mutual Insurance Co. v. White*, 336 F.Supp. 92, 99 (D.Del.1972).

Transport's BMC–90 was expressly intended to meet PST's obligation to assure financial responsibility whenever PST leased vehicles from others to transport freight. *See* 49 U.S.C. § 10927; 49 C.F.R. §§ 1057.22(c)(2), 1043; *see also id.* §§ 1057.12(d); 1057.12(k)(1) (requiring lessee to assume responsibility for insurance in written leases for periods longer than 30 days). In compliance with § 1057.22(c)(2), the written lease specified that PST was responsible for damage to the public. It would be anomalous to hold that Transport, employed by the carrier to insure for public damage resulting from its trip leasing activities, may avoid responsibility.

■ Once the trip lease went into effect upon delivery of the equipment to PST, the specific indemnities under the BMC–90 endorsement applied. We therefore conclude that PST's insurer Transport is liable. It remains to be determined whether Planet shares that liability.[7]

## III. *PLANET'S EXCLUSION*

If the accident occurred while Ainsworth was "in the business of anyone to whom the [truck was] rented," the terms of Planet's Trucker's endorsement eliminate coverage altogether.[8] On the strength of Ainsworth's testimony, the district court found that he was on his way to Apex, Nevada to pick up a load of wallboard for PST at the time the accident occurred. Although Transport tried to impeach this testimony,

---

**5.** Nor does it appear that PST and Transport intended the endorsement to provide coverage only for occurrences in the course and scope of employment. In the very same endorsement, Transport excludes responsibility for injuries to PST's *employees in the course of employment.* No such limitation to the course of employment appears in the provision dealing with liability to the public.

**6.** Other courts have held the authorized carrier liable under ICC regulations for operator negligence resulting from activities unauthorized by the lessee, such as short-haul driving for third parties. *Westmoreland*, 727 F.2d 494; *Rodriguez*, 705 F.2d 1229; *Mellon National Bank &*

*Trust Co. v. Sophie Lines, Inc.*, 289 F.2d 473 (3d Cir.1961).

**7.** Transport contends that its insurance is not primary with respect to Planet's insurance. We find that the only clause in Transport's policy that might allow Transport to avoid its primary insurance obligation, by its terms, applies *only* when there is "other valid and collectible insurance." Because we conclude that Planet did not cover this accident, Transport provides the only available coverage.

**8.** We review the district court's interpretation of the contract language *de novo. Miller v. Safeco Tit. Ins. Co.*, 758 F.2d 364, 367 (9th Cir.1985).

Transport suggested no other purpose for driving the rig at the time of the accident. Transport has not demonstrated that the district court's determination that Ainsworth was driving in the business of PST was clearly erroneous. *LaDuke v. Nelson,* 762 F.2d 1318, 1321 (9th Cir.1985); Fed.R. Civ.P. 52(a).

Transport makes two arguments in support of its contention that the trucker's endorsement should not prevent Planet from bearing some of the loss. First, Transport contends that the trucker's endorsement is void as against public policy because, under certain circumstances, it might leave Ainsworth's truck wholly uninsured in violation of Nevada's financial responsibility law. We have difficulty accepting this hypothetical prospect as sufficient to invalidate the exclusion. The carrier-lessee's policy covered during trip leases; Ainsworth's policy covered while he was not engaged in another's business. As far as we can discern,[9] the tractor was covered at all times during this typical trip lease, and would be during others.

Second, Transport argues that Planet's excess insurance clause in its standard policy covers this accident. But the trucker's endorsement prominently stated that it modified the standard policy provisions, specifically excluding coverage under the conditions present in this case.[10] Planet did not contract to insure Ainsworth's tractor when it was operating in the business of others, and its exclusion is binding. *See Baton v. Transamerica Insurance Company,* 584 F.2d 907, 910 (9th Cir.1978).

We therefore conclude that Planet's trucker's endorsement precluded coverage at the time of the accident. Because Planet did not extend coverage to any loss arising from this accident, we do not address Transport's suggestion that federal statutes, regulations, and the terms of the

ICC-mandated endorsement intended to protect the public should not affect allocation of liability between members of the insurance industry.[11]

**CONCLUSION**

Planet's endorsement completely excluded coverage. We affirm the district court's determination that Transport, insurer to the authorized carrier, is responsible for liabilities arising from Ainsworth's operation of the truck at the time of the fatal accident on December 30, 1982.

AFFIRMED.

9. Transport did not allege that Ainsworth used his truck for a carrier or business that did not provide coverage.

10. Trucker's endorsements are not uniform. Some contain endorsements providing excess insurance coverage when liability exceeds the limits of the authorized carrier's policy. *E.g., Transport Indemnity v. Carolina Casualty,* 133 Ariz. at 398, 652 P.2d at 137; *Canal Ins. Co. v.*

*United States Fidelity & Guaranty Co.,* 149 Ariz. 578, 580, 720 P.2d 963, 965 (App.1986). Planet's trucker's endorsement contains no such excess coverage clause.

11. *See, e.g., Transport Indemnity v. Carolina Casualty,* 133 Ariz. at 705–06, 652 P.2d at 143–44.