RUDIGER CHAROLAIS RANCHES, a Canadian corporation, Plaintiff–Appellant,

v.

VAN DE GRAAF RANCHES, a Washington corporation, Defendant–Appellee.

No. 91–36002.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 5, 1993.

Decided May 27, 1993.

Stephen D. Phillabaum, Phillabaum & Ledlin, Spokane, WA, for plaintiff-appellant.

Donald H. Bond and Gregory S. Lighty, Halverson & Applegate, Yakima, WA, for defendant-appellee.

Before: BOOCHEVER, THOMPSON and KLEINFELD, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

## OVERVIEW

Plaintiff Rudiger Charolais Ranches ("the Gang Ranch") appeals from a judgment resulting from the district court's grant of a directed verdict in favor of the defendant, Van De Graaf Ranches, Inc. The issue presented on appeal is whether a merchant who buys cattle from a person holding voidable title can be a "good faith purchaser for val-

ue" when the industry custom the buyer observed in the transaction conflicts with a statute regulating the industry.

In this diversity action, we apply the Uniform Commercial Code ("UCC") as enacted in the State of Washington. We have jurisdiction under 28 U.S.C. § 1291. We vacate the judgment and remand.

## FACTS

The Gang Ranch is a British Columbia cow-calf operation which sells calves to cattle buyers. In February 1989, Ernest Etherton contacted the Gang Ranch and represented that he was a cattle buyer. The Gang Ranch manager assumed this meant that Etherton was a licensed and bonded cattle buyer. Etherton negotiated to buy 306 head of cattle from the Gang Ranch for $244,347.95. Etherton was not a licensed cattle buyer.

Payment for the cattle was to be by wire transfer into the Gang Ranch's bank account on the same day the cattle passed Customs at the United States–Canadian border. A health inspection problem delayed delivery, and therefore the time for payment, until a Saturday when banks were closed. The wire transfer could not be made until the following Monday.

The Gang Ranch transferred the 306 head of cattle to Etherton on Saturday, without being paid. The cattle were transported in five truckloads. Etherton was given the required shipping documents for each load. These documents showed that he was the consignee of the cattle. Etherton was not given a brand release or a bill of sale, either of which would have made him the owner of the cattle. The Gang Ranch's "JH" brand was clearly visible on all of the cattle.

Prior to obtaining the cattle from the Gang Ranch, Etherton had offered to sell them to the defendant, Van De Graaf Ranches. Dick Van De Graaf, the principal owner of the ranch, had never done business with Etherton and did nothing to investigate him or his license status. He did not have Etherton's address or phone number. Van De Graaf Ranches agreed to pay Etherton $203,999.18 for the cattle. This was around $40,000 less than Etherton was supposed to pay the Gang Ranch.

Van De Graaf Ranches accepted the cattle with only two of the thirty documents the Gang Ranch had provided to Etherton, both of which were copies rather than the required originals. These documents, a brand inspection certificate and a veterinarian's certificate, were for only one out of the five loads of cattle. Van De Graaf Ranches did not attempt to obtain other documentation or verify Etherton's ownership until three business days after the cattle had arrived. Trusting Etherton, it wired the funds to him the first business day after the cattle arrived. Etherton never paid the Gang Ranch. He later pleaded guilty to a criminal charge in connection with the cattle deal.

The Gang Ranch has since recovered $136,530.83 from Etherton. In this suit, it seeks to recover the $107,817.12 shortfall from Van De Graaf Ranches.

The Gang Ranch unsuccessfully moved for summary judgment. The case was tried to a jury. The Gang Ranch offered in evidence a certified copy of Etherton's guilty plea in the criminal case. This was excluded by the district court. The court also rejected the Gang Ranch's proffered expert witness, Don Zeimantz, a banker who reviews many cattle transactions per year. Zeimantz was offered as an expert to describe reasonable commercial standards in the beef cattle industry. The court excluded his testimony because his expertise was limited to banking.

The defense introduced evidence of the reasonable commercial standards in the beef cattle industry. The manager of the Gang Ranch, Larry Ramsted, testified that in the 100–200 cattle sale transactions in which he had participated over 23 years, bills of sale had been used in only 10–20 transactions. Dick Van De Graaf testified that Van De Graaf Ranches does not hold back payment until all paperwork has arrived, because the federal Packers and Stockyard Act requires a dealer buying cattle to pay for it within twenty-four hours. *See* 7 U.S.C. § 228b(a) (1988). When cattle trucked to the Van De Graaf Ranch are not accompanied by complete documentation, the seller normally mails any missing documents to the buyer.

Customarily, when selling cattle, the transfer of possession takes the place of a bill of sale. Finally, Keith Tromberg, an accountant for Van De Graaf Ranches, testified that bills of sale were used "very infrequently." He also testified that brand inspection certificates were often obtained from the seller long after delivery of the cattle and usually by an inspector for the Washington Department of Agriculture for the purpose of auditing the ranch.

At the close of the evidence, the court directed a verdict in favor of Van De Graaf Ranches. Judgment was entered and this appeal followed.

## DISCUSSION

We review de novo a district court's grant of a directed verdict. *In re Hawaii Federal Asbestos Cases,* 960 F.2d 806, 816 (9th Cir. 1992). On appeal, we apply the same standard applied by the district court. *McGonigle v. Combs,* 968 F.2d 810, 816 (9th Cir.), *cert. dismissed sub nom., Casares v. Spendthrift Farm,* — U.S. —, 113 S.Ct. 399, 121 L.Ed.2d 325 (1992). "[A] directed verdict is proper when the evidence permits only one reasonable conclusion as to the verdict." *Id.*

The Gang Ranch presented two independent theories of recovery. It contended that Etherton's title to the cattle was void because he was a thief. It also contended that Etherton's title was voidable and that he passed voidable title to Van De Graaf Ranches, which was not a good faith purchaser for value.

█ Under the UCC as enacted in the State of Washington, a person with voidable title has power to transfer good title to a good faith purchaser for value. Wash.Rev. Code § 62A.2–403 (supp.1993). Voidable title is the title obtained by a wrongdoer when a victim voluntarily turns property over to the wrongdoer. *Id.* § 62A.2–403(1). Here, in reliance on Etherton's false representation, the Gang Ranch voluntarily delivered the cattle to him. Under Washington law, Etherton held voidable title to the cattle. The question is whether Van De Graaf Ranches was a good faith purchaser for value.

It is undisputed that Van De Graaf Ranches gave value for the cattle. In granting the directed verdict, the district court held as a matter of law that Van De Graaf Ranches acted in good faith. The Gang Ranch argues the question of Van De Graaf Ranches' good faith should have been submitted to the jury.

Van De Graaf Ranches is a "merchant" under Washington law, because it deals in cattle. Wash.Rev.Code § 62A.2–104 (1966). "Good faith" for merchants requires honesty and observance of reasonable commercial standards of the trade. Wash.Rev.Code § 62A.2–103(1)(b) (1966). It is the meaning of "reasonable commercial standards" which concerns us here.

At the time Etherton acquired possession of the cattle, Washington Revised Code § 16.57.280 provided:

No person shall have in his possession any livestock marked with the recorded brand or tattoo of another person unless:

(1) such livestock bears his own healed recorded brand, or

(2) such livestock is accompanied by a certificate or permit from the owner of the recorded brand or tattoo, or

(3) such livestock is accompanied by a brand inspection certificate, or

(4) such livestock is accompanied by a bill of sale from the previous owner or other satisfactory proof of ownership.[1]

Dick Van De Graaf conceded that Van De Graaf Ranches received none of the required documentation for four of the five loads of cattle delivered by Etherton. He testified, however, that this was not particularly unusual because common practice among buyers of cattle was to have sellers send the required documents by mail after the buyer had paid for the cattle and taken possession. Van De Graaf Ranches followed this practice. This evidence as to the reasonable commercial standards in the beef cattle industry was uncontroverted because the Gang Ranch's

---

1. This statute has since been amended. We are concerned here only with the statute as it read in February 1989, the time of the sale to Van De Graaf Ranches.

proffered expert witness was not permitted to testify.

· ▬ Even if Dick Van De Graaf was correct that the custom was for a buyer to take possession of cattle and pay for it, and then await the necessary documentation to arrive by mail, such a custom would be in direct conflict with Washington Revised Code § 16.57.280. The statute deals with the precise problem that presents itself here: the transfer of branded livestock without the consent of the rightful owner.

Under section 62A.2–103(1)(b) of the UCC, a custom or practice which violates a statute is not a reasonable commercial standard. The holding of *Mattek v. Malofsky*, 42 Wis.2d 16, 165 N.W.2d 406 (1969) is instructive. In that case, an automobile dealer entrusted with a vehicle sold it without permission. The buyer, another dealer, did not obtain a certificate of title as required by law. The court held that this failure was an unreasonable commercial practice as a matter of law even though transactions between dealers were almost always conducted without the legally required transfer of paper. "Evidence of custom or usage of automobile dealers contrary to the statute cannot be used to defeat the rights of a third party whatever the value of such evidence may be in adjusting disputes between dealers." *Id.* 165 N.W.2d at 408. *See also* 1 Ronald A. Anderson, *Uniform Commercial Code*, § 2–103.28, at 520 (1981) ("It is clear that public policy requires condemning the merchant who violates a statute and he is not excused from doing so by the fact that it is customary to violate the statute."). The adoption of the UCC in Washington did not alter a generally accepted principle of contract law: a custom in conflict with an existing statute will not be enforced. *See Walker v. The Transportation Co.*, 70 U.S. (3 Wall.) 150, 155, 18 L.Ed. 172 (1865).

The evidence was undisputed as to these propositions: (1) Van De Graaf acted honestly in fact and in conformity with the custom of the trade, but (2) Van De Graaf acted in violation of the branded cattle statute. The legislature of the State of Washington had the power to enact a statute contrary to the custom of the trade, and exercised that power. Perhaps in order to reduce problems of cattle rustling and cattle sales fraud which had arisen prior to its enactment, the statute controls purchase and possession of cattle in a way which cannot be reconciled with purchase of branded cattle without appropriate papers. In the face of the statute, the custom was not in conformity with "reasonable commercial standards." Wash.Rev.Code § 62A.2–103(1)(b) (1966). The cattle brand statute and the UCC imposed on Van De Graaf, as the buyer, the risk which materialized, if he did not require the papers required by the statute, regardless of his honesty and conformity with the customs of his trade. There could be no issue of fact except as to the extent of the sufficiency of the papers, and the amount of the damages.

We accordingly VACATE the judgment and REMAND for proceedings consistent with this opinion.[2]

---

**2.** We do not reach the other issues raised by the Gang Ranch in this appeal. Among these contentions, the Gang Ranch seeks review of the denial of its motion for summary judgment, claiming that the district court impliedly denied that motion when it granted Van De Graaf Ranches' motion for a directed verdict. However, the motion for summary judgment was never properly before the district court. The Gang Ranch's motion for summary judgment was filed only seven days prior to trial, with no accompanying memorandum or notice of hearing, in violation of local rules. Given our disposition of the case, if the Gang Ranch wishes to renew its motion for summary judgment following remand, it may do so in accordance with the district court's local rules. We express no opinion on how the district court might rule upon such a motion.