Genevieve ZAMALLOA, a single person, Plaintiff, Counter–Defendant,

v.

Robert HART, Defendant,

LIGON NATIONWIDE INCORPORATION, a Kentucky Corporation, Defendant, Cross–Claimant, Appellee–Cross–Appellant,

v.

KEN–RAY TRUCKING CORPORATION, a Wisconsin Corporation, Defendant, Counter–Claimant, Cross–Claimant, Appellant–Cross–Appellee.

Nos. 93–15207, 93–15461.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 17, 1994.

Decided Aug. 5, 1994.

This case arises out of a complaint for damages stemming from an accident involving a truck leased to Ken–Ray and driven by the truck's owner, Robert Hart. Ken–Ray settled with the injured party after the trial court found that Ken–Ray was Mr. Hart's "statutory employer" under Interstate Commerce Commission ("ICC") regulations governing vehicle leases by common carriers.

The primary issue in this appeal is whether Ligon was also Hart's statutory employer at the time of the accident, and thereby could be liable to Ken–Ray for contribution and indemnification. Because we find that Ligon could be statutorily liable for the accident, we reverse.

## BACKGROUND

Mr. Hart was the owner-operator of a tractor-trailer. In 1988, he leased his tractor-trailer with himself as the driver, to Appellant Ken–Ray. On August 9, 1988, Hart made a delivery for Ken–Ray. After the delivery, Ken–Ray released Hart to seek a load from another carrier for his return trip. Then Hart called Appellee Ligon to offer his truck for a "trip-lease."[1] Ligon agreed and directed Hart to its yard in Phoenix. En route to Phoenix, Hart was delayed for repairs and called Ligon to report the delay. The substance of this conversation is disputed by the parties. Ken–Ray and Mr. Hart contend that an agreement was reached between Ligon and Hart whereby Hart would detour to pick up a load at an AT & T warehouse in Phoenix and then proceed to the Ligon yard to sign the trip-lease and pick up Ligon's placard. At trial, Hart testified that Ligon gave him a pick-up number to give to AT & T so that AT & T would release the cargo.[2] Ligon denies this, and admits only that its representative agreed to meet

Edward Farman, Schindel, Cooper & Farman, New York City, for appellant Ken–Ray Trucking Corp.

M. Byron Lewis, Jennings, Strouss & Salmon, P.L.C., Phoenix, AZ, for appellee Ligon Nationwide Inc.

Before: GOODWIN, PREGERSON, and RYMER, Circuit Judges.

PREGERSON, Circuit Judge:

## INTRODUCTION

Ken–Ray Trucking Corp. ("Ken–Ray"), a common carrier, appeals a directed verdict in favor of another common carrier, Ligon Nationwide Inc. ("Ligon"). We have jurisdiction over this diversity action under 28 U.S.C. § 1332.

---

1. A trip lease is a lease usually of short duration that covers a specific haul. For clarity we will here denominate Ken–Ray's lease, which covered multiple hauls, as a "long-term lease," although this is not a term of art.

2. According to Hart, who appeared at the subsequent trial as Ken–Ray's witness, Ligon's representative offered a load of reels of wire for shipment to Florida. Hart testified that he and Ligon's representative discussed the type of load, the location of pick up and delivery, pick up

time, Hart's compensation, and the type of equipment. Hart further testified that Ligon's representative directed him to report to the Ligon yard in Phoenix to sign a trip lease and then proceed to AT & T for pick up. Hart testified that when he telephoned Ligon to advise it of the delay, the representative gave him an AT & T pick up number and told him to drive directly to AT & T for pick up and then to proceed to the Ligon yard.

with Hart at AT & T instead of at the Ligon yard.[3]

In any case, Hart drove immediately to the AT & T yard. As Hart was turning into the AT & T yard, with Ken–Ray's placard still affixed to his trailer, Hart collided with a van driven by Genevieve Zamalloa. Ms. Zamalloa sued Hart, Ken–Ray, and Ligon. Ken–Ray cross-claimed against Ligon for indemnity and contribution. Eventually, Ken–Ray and Ms. Zamalloa settled, leaving only Ken–Ray's cross-claim for indemnity and contribution to be determined at trial.

Ken–Ray initially contended that Ligon could be held vicariously liable for Mr. Hart's actions either under the common law respondeat superior doctrine or under the ICC regulations. The district court granted Ligon's summary judgment motion as to Ken–Ray's respondeat superior theory, but it rejected Ligon's summary judgment motion as to the ICC regulations, holding that Ligon could potentially be held liable as Hart's statutory employer.

The court then bifurcated the trial and conducted a jury trial on the single issue of whether Ligon was Hart's statutory employer under the ICC regulations, reserving all other triable issues (e.g., damage, causation, indemnity, etc.) for a second trial, if necessary. At the close of evidence of this trial, the court granted Ligon's motion for a directed verdict, ruling, in essence, that Ligon could not have been Hart's statutory employer because Hart had not yet loaded up his cargo. Ken–Ray appeals the directed verdict.

## STANDARD OF REVIEW

■ We review de novo the district court's grant of a directed verdict. *Montiel v. City of Los Angeles,* 2 F.3d 335, 342 (9th Cir.1993). "A directed verdict is proper when the evidence permits only one reasonable conclusion as to the verdict." *Rudiger Charolais Ranches v. Van De Graaf Ranches,* 994 F.2d 670, 672 (9th Cir.1993). We must view the evidence in the light most favorable to appellant and draw all possible inferences in favor of appellant. *Miller v. Fairchild Industries, Inc.,* 885 F.2d 498, 503 (9th Cir.1989).

## ANALYSIS

■ The question before us is whether Ligon was Hart's statutory employer under the ICC regulations at the time of the accident and thereby potentially liable for Hart's allegedly tortious acts. Ligon asserts two arguments in support of its contention that it was not Hart's statutory employer. First, it contends that under the ICC regulations there can be only one statutory employer at a time. Second, it argues that it never established a statutory employment relationship with Hart.[4]

## I. Statutory and Regulatory Background

The statutory and regulatory provisions that have been interpreted to create liability based on statutory employment are contained in 49 U.S.C. § 11107 and 49 C.F.R. § 1057. These provisions regulate common carrier leases of trucks and tractor-trailers from other common carriers as well as from truck owners who are not common carriers. They were enacted by Congress to protect the public by preventing common carriers from evading liability for accidents caused by drivers. *Planet Insurance v. Transport In-*

**3.** The representative, testifying at trial on behalf of Ligon, stated that he could not recall telling Hart to pick up the load before inspection of his truck and completion of the paperwork. He contended that he would never have told *any* driver to pick up a load before inspection. In addition, Ligon claimed that AT & T would not have allowed any load to leave its yard without Ligon's placard.

**4.** Ligon also appears to argue that Ken–Ray cannot appeal denial of Ken–Ray's cross-claim for indemnity and contribution because only the statutory employer issue was decided by the dis-

trict court. We reject this argument. As Ken–Ray points out, the district court's ruling on the statutory employer issue necessarily disposed of the cross-claim as well. To the extent Ligon's argument is that we cannot determine the other issues involved in the cross-claim, issues that have yet to be addressed by the district court, we agree. The only effect of our ruling today is to remand the issue of statutory employment to the district court, and to preserve Ken–Ray's ability to make such additional claims as are necessary to prove indemnity and contribution.

*demnity,* 823 F.2d 285, 287 (9th Cir.1987). *See Empire Fire and Marine Insurance v. Guaranty National Insurance,* 868 F.2d 357, 362 (10th Cir.1989) (discussing past confusion about who was financially responsible for accidents caused by the drivers of leased trucks).

49 U.S.C. § 11107(a)(4) authorizes the Interstate Commerce Commission to require a carrier to

> have control *and be responsible* for operating [the vehicle] in compliance with requirements prescribed by the Secretary of Transportation on safety of operations and equipment, and with other applicable law as if the [vehicle] were owned by the motor carrier.

(Emphasis added).

The ICC regulations implementing § 11107(a)(4) require any contract between truck owners or contractors and common carriers ("carrier lessees") to include a written lease. 49 C.F.R. § 1057.11(a). The lease must provide that the carrier lessee has "exclusive possession, control, and use" of the vehicle and that the carrier lessee "assume[s] complete responsibility for the operation of the equipment." 49 C.F.R. § 1057.12(c)(1). The first dispute between the parties concerns whether this requirement is consistent with there being more than one statutory employer at a time. We address this issue in Section II.

In addition to the written lease requirement, the carrier lessee must also comply with other formalities evidencing the carrier lessee's control over the truck driver and its consequent vicarious responsibility for tortious acts by the driver. Most significantly, the lessee must obtain a receipt for the truck, and the carrier's name and ICC number must at all times be visibly displayed on the leased vehicle. 49 C.F.R. § 1057.11(a)–(d). It is undisputed that where each of these requirements are met the carrier becomes the statutory employer of the driver. *See Planet,* 823 F.2d 285. But the parties differ about what happens when the carrier fails to abide by some or all of the regulations. We address this issue in Section III.

## II. Multiple Statutory Employers

■ Ligon contends that Ken–Ray's admission that Ken–Ray was Hart's statutory employer *precludes* it from claiming that Ligon was also Hart's statutory employer. The force of Ligon's argument derives from the language of the regulations requiring a common carrier to take "exclusive possession" and "complete responsibility" for the operation of the vehicle once a contract is formed between the common carrier and the lessor (in this case the driver). *See* 49 C.F.R. § 1057.12(c)(1). Ligon contends that such complete responsibility is inconsistent with any additional responsibility on the part of others. The district court disagreed, holding that the framework of the law and regulations, the policies animating their adoption, and the caselaw were all in accord that there can be more than one statutory employer. This is a close question, but we agree with the district court.

By our reading, the regulations establish that, *as between the contracting lessor (in this case the owner-driver) and the common carrier,* the carrier must accept "complete responsibility" for the vehicle.[5] But we do not read the regulations to preclude sharing of control or responsibility *among common carriers.* As discussed below: (1) the regulations are consistent with our reading; (2) caselaw has not interpreted the "complete responsibility" language of the regulations to prevent more than one carrier from being held liable for the tortious acts of drivers; and (3) allowing drivers to have more than one statutory employer is consistent with the statute's intent to protect the public.

### A. Regulations

Ligon's strongest argument is that the plain words of the regulations require a carrier to undertake "exclusive" control and "complete" responsibility, and that this is inconsistent with two or more carriers sharing responsibility at the same time. But this argument loses much of its force because under certain conditions it is clear that more

---

**5.** We take no position on whether the regulations at issue in this case necessarily preclude the carrier-lessee from pursuing a claim under state law against the driver-lessor.

than one common carrier *can* share ownership and control of leased vehicles. *See Lease and Interchange of Vehicles by Motor Carriers E & L Transport Company, Metro Auto Transport, Inc., Nationwide Auto Transport, Inc.,* 1991 WL 284605 (Dec. 1991) (ICC Leasing Board waived certain regulatory requirements for two common carriers with joint control over a vehicle—expressly recognizing that two common carriers may share statutory employment); *Lease and Interchange of Vehicles by Motor Carriers Baker Truck Lines, Inc., Baker Truck Service, Inc.,* 1991 WL 258990 (Dec. 1991) (same). Such sharing of ownership and control implies a consequent sharing of responsibility.

Furthermore, the regulations governing leases *between common carriers* also implicitly approve shared control and responsibility among carriers. These regulations require the carrier lessee to assume "control and responsibility" over the operation of the vehicle.[6] This language is significant in comparison with the regulations governing leases *between carriers and non-common carrier contractors or owner-drivers,* which, as discussed above, require the common carrier lessee to assume "complete" control over the vehicle.[7] By implication, then, the regulations permit a sharing of control between two common carriers, but do not permit a common carrier to share control or responsibility with a lessor contractor or owner-driver.

### B. Caselaw

Most courts that have examined the issue have agreed that holding one common carrier lessee statutorily liable does not necessarily preclude additional liability of other common carrier lessees. In *Simmons v. King,* 478 F.2d 857 (5th Cir.1973), the Fifth Circuit held that the statutory liability of one carrier lessee does not preclude joint and several liability of another carrier lessee based on a common law theory. *Simmons,* like the instant case, involved a dispute between two carriers, one which exerted long-term control over the driver, and the other which had trip-leased the vehicle. The trip-lease provided that "the leased equipment ... is in the exclusive possession, control and use of [the trip-lessee] and that the [trip-lessee] assumes full responsibility ... to the public." *Id.* at 862 n. 13. The court had little difficulty determining that neither this language nor the ICC regulations precluded the long-term carrier from also being held liable for the actions of the driver. *Id.* at 867. *See also Rosu v. Law,* 193 F.2d 894 (3rd Cir.1952) (upholding a jury verdict against two carrier lessees); *Taft Equipment Sales Company v. Ace Transportation, Inc.,* 851 F.Supp. 1208, 1215 (N.D.Ill.1994) (noting "where ... all parties are knowledgeable in the industry and where none is an uninformed member of the public, there is no clear public policy favoring the imposition of 'complete responsibility' on the lessee."); *Laux v. Juillerat,* 680 F.Supp. 1131, 1138 (S.D.Ohio 1987) (holding two carrier lessees jointly and severally liable, one of whom was a statutory employer of the driver), *aff'd mem.,* 860 F.2d 1079 (6th Cir.1988) (per curiam); *Rankin v. Fischer,* 295 Pa.Super. 215, 441 A.2d 426 (1982) (same). None of these cases has held that there can be more than one statutory employer. Nevertheless, their logic is inconsistent with the claim made here by Ligon, that the "complete responsibility" accepted by a statutory employer carrier precludes other carriers from sharing control or liability for the driver's actions.

Ligon cites *Ryder Truck Rental v. UTF Carriers,* 719 F.Supp. 455 (W.D.Va.1989), for the proposition that a finding of statutory liability precludes the liability of other carriers. *Ryder,* however, is distinguishable. In *Ryder,* the court held that the complete responsibility requirement is inconsistent with holding both a common carrier lessee and a

---

**6.** 49 C.F.R. § 1057.22 reads, "Exemption for private carrier leasing and leasing between authorized carriers ... (c)(2) ... [the agreement] must provide that *control and responsibility for the operation of the equipment* shall be that of the lessee...." (Emphasis added).

**7.** 49 C.F.R. § 1257.12(c)(1) requires that "[t]he lease shall provide that the authorized carrier lessee shall have *exclusive possession, control, and use* of the equipment.... [and] further provide that the authorized carrier lessee shall assume *complete responsibility* for the operation of the equipment." (Emphasis added).

contractor lessor liable at the same time. We note, first, that this district court opinion is the only one we have found that has come to this conclusion. We note further that the Fourth Circuit explicitly declined to reach this issue when it affirmed *Ryder* on other grounds. *See Ryder Truck Rental Co. v. UTF Carriers, Inc.,* 907 F.2d 34, 35 (4th Cir.1990).

In any case, we need not decide if we approve of the reasoning of the district court in *Ryder* because the facts of that case are distinguishable from those in the case at bar. *Ryder* arose in the context of a dispute between a common carrier lessee and a contracting company lessor rather than, as here, between two common carriers. This distinction is important because, as discussed above, the regulations require the common carrier to accept "complete responsibility" from a private lessor, whereas two common carriers may share responsibility. In the case at bar, both the long-term lessee carrier, Ken–Ray, and the alleged trip-lessee carrier, Ligon, have a contractual relationship only with the truck driver lessor Hart. Where a contract has formed between a carrier lessee and a driver lessor then the regulations may, as the district court in *Ryder* found, contemplate a complete shift of responsibility from the driver lessor to the carrier lessee for the benefit of the public. *See Ryder,* 719 F.Supp. at 455. But in the current situation, between two common carrier lessees, the fact that a contract has been formed between one carrier lessee and the truck driver lessor need have no bearing on whether another carrier lessee has also formed a contract or otherwise established liability for the actions of the truck driver.[8]

Ligon also cites *Wyckoff Trucking v. Marsh Brothers Trucking,* 58 Ohio St.3d 261, 569 N.E.2d 1049 (1991), to support its position that the ICC regulations only contemplate a single statutory employer at a time. But that case does not so hold. *Wyckoff,* like the case before us, involved a long-term carrier lessee and a second carrier that had "trip-leased" from the truck driver. The court held that the long-term carrier lessee was statutorily liable. Ligon argues that in so doing the court precluded liability by the other carrier. But in fact the court did *not* address the question at issue here, that is, whether the trip-lessee could also have been liable. The court stated: "Once liability is fixed on the statutory employer, it is the statutory employer who must seek contribution or indemnification from other potentially responsible parties." *Id.* at 266, 569 N.E.2d at 1053. Indeed, the court remanded for analysis of the contribution/indemnification claims. *Id.* at 267, 569 N.E.2d at 1054 n. 2.

## C. Policy

The policy considerations underlying Congress's creation of statutory liability also argue in favor of allowing more than one carrier to be statutorily liable at the same time. Congress instituted the provisions here at issue "to impose financial responsibility requirements upon authorized carriers to protect the public." *Planet,* 823 F.2d at 287. We would frustrate this purpose were we to hold that only one common carrier at a time could be the driver's statutory employer because we would allow a common carrier who had leased a truck to avoid liability simply because another carrier had also done so. This would encourage carriers to wage battle among themselves about *which* was the *single* responsible carrier, thereby delaying recompense to the injured party.

Furthermore, where one of the carriers is insolvent, a rule that only one carrier at a time can be statutorily liable could result in a complete loss of compensation. It is noteworthy that, in the case at bar, Ken–Ray's insurer's ability to satisfy a judgment was initially called into question. To quote the district court: "[t]he potential delays that may accompany a case with multiple defendants do not outweigh the benefits to the public in providing for joint and several liability, especially when one defendant may be insolvent." Excerpts of Record at 40.

---

**8.** The above discussion of *Ryder* should not be read either as an endorsement or criticism of that opinion's conclusion that a contractor lessor may not share liability with the common carrier statutory employer of the driver.

## III. Requirements to Establish Statutory Liability

■ Having concluded that more than one common carrier may be a statutory employer of a driver at the same time, we must determine whether the relationship between Hart and Ligon was sufficient to establish such a statutory employment. Ligon contends that there can be no liability under the ICC regulations unless the carrier and the vehicle owner have signed a written lease or, in the absence of a *written* lease, unless the carrier has obtained "actual possession" of the truck. It appears that, in Ligon's view, the carrier does not obtain "actual possession" of the truck until the truck displays the carrier's placard *or* has at least picked up a load for the carrier. Similarly, the district court found that absent a written lease statutory employment could not begin until the driver picked up the load. For the reasons discussed below, we do not find any basis for either of these interpretations of the regulations. Rather, we hold that the necessary relationship can be formed via an *oral* lease between the carrier and the vehicle owner even before the driver picks up the cargo.

■ As discussed above, the ICC regulations require a carrier lessee to execute a written lease, to clearly identify the vehicle as in the employ of the carrier, and to observe other formalities evidencing its control over the vehicle and its responsibility for its actions, including displaying the carrier's placard. 49 C.F.R. § 1057.11(a)–(d). The parties agree that compliance with these requirements creates an irrebuttable presumption of an employment relationship sufficient to establish the carrier's liability for injuries caused by the truck.

The leading case in this circuit on whether liability can be imposed on a carrier even absent substantial compliance with § 1057.-11(a)–(d) is *Planet Insurance v. Transport Indemnity*, 823 F.2d 285 (9th Cir.1987). In *Planet Insurance*, the plaintiff attempted to hold a a carrier liable for injuries resulting from an accident involving a leased truck. The truck driver had signed a written lease with the carrier lessee, but had neither picked up his load nor begun displaying the carrier lessee's placard at the time of the accident. The carrier argued that compliance with the regulatory requirements, specifically, display of the carrier's placard, was a precondition to establishing statutory employment and liability under the ICC regulations. We did not agree, holding that failure to comply with the regulatory requirements could not relieve the carrier from liability so long as the vehicle was in fact under the control of the carrier. To hold otherwise would be to "stray impermissibly from the allocation of responsibility contemplated by Congress and the ICC." *Id.* at 287. In *Planet*, the lease provided sufficient evidence to demonstrate that the truck was under the carrier's control at the time of the accident. By its terms the lease became effective as soon as the truck was delivered into the carrier lessee's possession. We held that such possession began when the driver started out to pick up the load at the direction of the carrier, not when the load was physically acquired nor when the ICC placard was displayed. *Id.*

The facts of the instant case are similar to those in *Planet* except that in *Planet* the lease between the carrier and owner-driver was in writing whereas here the alleged lease was oral. We do not find this distinction material. No court has held that a written lease is a condition precedent to imposition of statutory liability on carrier lessees. *See Wilson v. Riley Whittle, Inc.*, 145 Ariz. 317, 701 P.2d 575 (Ct.App.1985) ("the absence of a written trip lease is legally irrelevant"); *see also Fuller v. Riedel*, 159 Wis.2d 323, 464 N.W.2d 97 (Ct.App.1990) (finding statutorily liable a carrier lessee who entered into an oral trip lease and whose sign was not displayed at the time of the accident); *Cox v. Bond Transportation, Inc.*, 53 N.J. 186, 249 A.2d 579 (carrier lessee statutorily liable under an oral lease for an accident that occurred while the driver was on his way home), *cert. denied*, 395 U.S. 935, 89 S.Ct. 1999, 23 L.Ed.2d 450 (1969).

In *Wilson*, the court emphasized that the carrier lessee's own loose internal procedures had allowed the load to be picked up without a signed lease. The court reasoned that the public policy behind 49 C.F.R. § 1057 would be wrongfully frustrated if the court allowed

the carrier lessee "to evade the liability imposed upon it ... by asserting that a written trip lease was a condition precedent to any contract between the parties." *Wilson,* 145 Ariz. at 321, 701 P.2d at 579. We agree. It would defeat the intent behind § 1057 to enable carriers to benefit from their own failure to comply with ICC regulations.

 Therefore, if the conversations between Mr. Hart and Ligon's representatives were sufficient to create an oral lease, and if the facts show that the lease had taken effect at the time of Hart's accident, then Ligon may be held liable for the accident as Hart's statutory employer. All that remains is to determine whether the evidence presented to the court could reasonably have been interpreted by the jury to demonstrate that such an oral lease was formed.[9]

Crediting Ken–Ray's version of the facts, as we must for purposes of this appeal, Ligon's representative told Hart to go to the AT & T yard, to pick up the load from AT & T, and then to go to Ligon's office to pick up Ligon's placard. Hart and Ligon's representative agreed to the terms of the deal, and, significantly, Ligon gave Hart a pick-up number so that he could obtain the cargo from the AT & T yard. After getting the pick-up number, Hart headed directly to the AT & T yard in Phoenix. The sole reason why no written lease was executed and why Ligon's ICC placard was not affixed to Hart's trailer was because Ligon's representative told Mr. Hart that all this would be done after he picked up the load at the AT & T yard. Believing these facts, a jury could well have determined that Mr. Hart and Ligon had made an oral lease and that the lease was in effect at the time of the accident.

## CONCLUSION

We hold that the ICC regulations permit there to be more than one statutory employer at the same time. Furthermore, failure to comply with the ICC regulations cannot insulate a common carrier from statutory liability for the actions of owner-drivers with whom they contract. Common carriers are liable as the statutory employers of the drivers from whom they lease trucks during the term of the lease, regardless of whether the lease is written or oral. Here, a jury could have believed Ken–Ray's witnesses who testified that a lease between Mr. Hart and Ligon was in effect at the time of the accident. We therefore reverse the district court's grant of a directed verdict for Ligon and remand to the district court for a re-trial on the issue of whether Ligon was Hart's statutory employer at the time of the accident, and on all additional issues including indemnification and contribution, that have yet to be addressed.[10]

REVERSED and REMANDED

---

9. Ligon argues that, as a matter of law, no contract could have been formed between Hart and Ligon. But it cites no caselaw for its proposition that compliance with the ICC regulations is a condition precedent to such a contract. Ligon also contends that no contract could have existed because the parties did not intend to be bound until the contract was signed. But the facts, viewed from Ken–Ray's point of view, are sufficient to find that a contract could have existed.

10. Because we reverse the directed verdict we also dismiss as moot Ligon's cross-appeal of the district court's attorney's fees ruling and deny Ligon's motion for attorney's fees.