MERCHANTS FAST MOTOR LINES,
INC., Petitioner,

v.

INTERSTATE COMMERCE
COMMISSION,
Respondent.

No. 75–2191.

United States Court of Appeals,
Fifth Circuit.

March 18, 1976.

Rehearing Denied May 5, 1976.

Jerry C. Prestridge, Austin, Tex., for petitioner.

John D. Hughes, Asst. Atty. Gen., Austin, Tex., for Railroad Commission of Texas.

Fritz R. Kahn, Gen. Counsel, I. C. C., Betty Jo Christian, James T. Proctor, Raymond M. Ripple, John H. D. Wigger, Dept. of Justice, Peter M. Shannon, Jr., I. C. C., Washington, D. C., for respondent.

James E. Snead, Santa Fe, N. M., for Whitfield Transportation, Inc.

Before GOLDBERG, DYER and RONEY, Circuit Judges:

DYER, Circuit Judge.

Merchants petitions us to set aside the grant of a permanent alternate route by the Interstate Commerce Commission to a competing carrier, Whitfield. Merchants argues that the ICC's approval of the route is invalid because of lack of jurisdiction and insufficiency of the evidence. The central issue posed by Merchants is whether the ICC has jurisdiction to permit an interstate carrier to move traffic interstate in character, for operating convenience only, over an alternate route that lies wholly within a single state. We think it is clear that the ICC has such jurisdiction. Conversely it is equally clear that a carrier cannot use the alternate route for transporting intrastate traffic because the ICC has no jurisdiction to grant such authority.

Merchants transports commodities solely within Texas. It has authorization for carrying goods moving wholly intrastate from the Texas Railroad Commission, and, for goods moving in interstate commerce, from the ICC. Whitfield is a multistate carrier which holds various operating certificates from the ICC, one of which is for carrying traffic between Dallas and El Paso, by way of New Mexico. Whitfield has no authority to carry intrastate traffic. Thus, Merchants and Whitfield compete only for interstate traffic.

In 1974, Whitfield applied for a temporary alternate route between Dallas and El Paso, Texas, without traversing the New Mexico loop which was part of Whitfield's original certificated route.[1] Subsequently, Whitfield amended its original filing for authority to utilize the alternate route permanently. The ICC granted Whitfield the requested alternate route, having determined that it satisfied the statutory restrictions that it (1) was for operating convenience only, (2) was between two termini of the regular route, (3) did not change the nature of the service rendered by the regular route, and (4) did not materially change the competitive situation between applicant carrier and any other carrier.[2]

---

1. Whitfield's application for the alternate route was based upon temporary highway and bridge conditions growing out of restrictions by the Texas Highway Department. The application was made pursuant to ICC temporary detour and emergency route deviation rules. 49 C.F.R. § 1042.4(c)(4), (6). The regulations define an alternate route as:

    A designated highway or series of highways lying wholly within the United States over which a regular-route motor common carrier of property may operate for operating convenience only, serving no intermediate points and serving the termini only to the extent authorized over the existing appurtenant service route.

    49 C.F.R. § 1042.4(b)(1).

2. The basis for such an alternate route authority is set forth in 49 C.F.R. § 1042.4(c)(11)(i): An ICC certificated carrier may

    use such other highway as an alternate route for operating convenience only and with no service at the termini except as otherwise authorized, in the manner and to the extent, as follows:

    Where such carrier is authorized to operate over a regular route and there is a highway or highways which may be used as an alternate route between two points on the carrier's regular route regardless of the ratio of the distance over such alternate route between the point of deviation and the point of return to the distance over the carrier's regular service route between the same points,

Merchants unsuccessfully raised a jurisdictional objection to the grant of the permanent alternate route in protest proceedings before the ICC. Merchants, joined by the Railroad Commission of Texas, now petitions this Court to set aside Whitfield's alternate Dallas-El Paso route as beyond the statutory power of the ICC because the route does not cross state lines. They argue that the ICC's approval of the alternate route effected a conversion of an interstate operation into an intrastate one; the ICC has no jurisdiction to effectuate such a conversion, and, the ICC action therefore entrenches upon the regulatory jurisdiction of the Texas Railroad Commission.

Merchants' contention can be succinctly stated as follows: Whitfield transported traffic over a route that was geographically interstate (Dallas, Snyder, Carlsbad, El Paso). The ICC assumed that the traffic was interstate *in character* because it moved over this route. This fact established for the Commission the *character* of the commerce and was not subject to attack. Thus what had been interstate traffic simply because it passed over state lines could now be carried between Dallas and El Paso, even though it in fact constituted intrastate traffic. Ergo the ICC was without jurisdiction to grant such a permanent alternate route.

This syllogistic argument omits consideration of the evidence adduced by Whitfield that showed that some of the traffic moving over the Dallas, Snyder, Carlsbad, El Paso route was interstate in character without reference to the fact that it crossed state lines, and the further admission made by Whitfield that it could not and would not move intrastate traffic over the permanent alternate route.

■ It is elemental that a carrier is engaged in interstate commerce when transporting goods either originating in transit from beyond Texas or ultimately bound for destinations beyond Texas, even though the route of the particular carrier is wholly within one state. Traffic need not physically cross state lines to be in interstate commerce, if the goods carried are in the course of through transit. "Through" is not to be confused with purely "local" traffic not destined for points outside the state of origin. *Shew v. Southland Corporation (Cabell's Dairy Div.),* 5 Cir. 1966, 370 F.2d 376, 380; *State of Texas v. Anderson, Clayton & Co.,* 5 Cir. 1937, 92 F.2d 104, *cert. denied,* 1937, 302 U.S. 747, 58 S.Ct. 265, 82 L.Ed. 578.

■ While the record before us is scanty, it does suffice to show an evidentiary basis for ICC jurisdiction for the permanent alternate route authority. Merchants, in an attempt to bolster its jurisdictional contention, argues insufficiency of the evidence for the first time on appeal. In neither its original protest, nor its petition for reconsideration before the ICC, did Merchants raise this point. We will not consider allegations of error in administrative proceedings not timely objected to before the agency itself. Such de novo consideration

> would be repugnant to orderly procedure and good administration for a party who had failed during the progress of an administrative hearing to timely insist upon his rights, to be allowed later to successfully raise the issue if it should develop that the recommendations of the trial examiner, upon which the agency decision was based, were not to his liking.

*Braswell Motor Freight Lines v. United States,* W.D.Tex.1967, 271 F.Supp. 906, 911; *United States v. Tucker Lines,* 1952, 344 U.S. 33, 36–37, 73 S.Ct. 67, 97 L.Ed. 54.

If Merchants can show that Whitfield is in violation of its ICC certification by

and regardless of whether or not such alternate route crosses or intersects or passes over or under, any other specifically authorized service or alternate route of the carrier at any place intermediate to the points of

deviation and return: *Provided,* That use of the alternate route will not materially change the competitive situation between such carrier and any other.

transporting intrastate traffic over the permanent alternate route, Merchants has recourse to the ICC, not the court. *Service Transfer and Storage Co. v. Virginia*, 1959, 359 U.S. 171, 177–179, 79 S. Ct. 714, 3 L.Ed.2d 717. The Interstate Commerce Act specifically empowers the ICC to investigate alleged violations of operating certificates, Section 204(c) of the Interstate Commerce Act, 49 U.S.C.A. § 304(c). The Commission possesses flexible enforcement powers to correct such violations, including certificate revocation of the offending carrier. 49 U.S. C.A. § 312.

■ Moreover, separate and apart from the primary enforcement proceedings before the ICC, parties injured by "clear and patent" violations may, under 49 U.S.C.A. § 322(b)(2), apply to enjoin such violations in federal district court. *Baggett Transportation Co. v. Hughes Transportation, Inc.*, 8 Cir. 1968, 393 F.2d 710, 716, *cert. denied*, 1968, 393 U.S. 936, 89 S.Ct. 297, 21 L.Ed.2d 272.

Petition dismissed.