**ROYAL INDEMNITY COMPANY,**
Plaintiff,

v.

**Reed JACOBSEN; Michael Holden and Kelly Holden, d/b/a Holden Farms; David L. Stinson, individually and as the Administrator of the Estate of Talyha Marie Stinson, deceased; and Donna Clark, Defendants.**

Civ. No. 93–C–751.

United States District Court,
D. Utah,
Central Division.

Sept. 23, 1994.

Roger H. Bullock, Strong & Hanni, Salt Lake City, UT, for plaintiff.

C. Richard Henricksen, Jr., Stephen J. Buhler, Henriksen & Henriksen, Salt Lake City, UT, for Stinson defendants.

Lorin D. Ronnow, Salt Lake City, UT, for Holden defendants.

## ORDER GRANTING AND DENYING MOTIONS FOR SUMMARY JUDGMENT

WINDER, Chief Judge.

This matter is before the court on three related motions for summary judgment: (1) Plaintiff Royal Indemnity Company's ("Royal" or "Royal Indemnity") Motion for Summary Judgment against both Defendants Reed Jacobsen, Michael Holden, and Kelly Holden (the "Holdens" or the "Holden Defendants") and Defendants David L. Stinson and Donna Clark (the "Stinsons" or the "Stinson Defendants"); (2) the Stinson Defendants' Motion for Partial Summary Judgment against Royal; and (3) the Holden Defendants' Motion for Partial Summary Judgment against Royal.

A hearing on all three motions was held on August 19, 1994. At the hearing, Royal was represented by Roger H. Bullock, the Stinson Defendants were represented by Stephen J. Buhler, and the Holden Defendants were represented by Lorin D. Ronnow. Before the hearing, the court considered carefully the memoranda and other materials submitted by the parties relating to all three motions. The court had also read certain of the authorities cited by each of the parties. Following oral argument on the motions, the court made certain rulings which will be referred to hereafter. The balance of the issues were taken under advisement and, since that time, the court has further considered the law and facts related to those matters. Having now fully considered the issues in this case, and good cause appearing, the court enters the following memorandum decision and order.

1. Additionally, Defendant Donna Clark is a Texas resident and the daughter of Talyha Marie Stinson, now deceased.

2. The hay was owned by Larsen Farms of Ephraim, Utah, and was being transported to the Pahrump, Nevada dairy for a fee.

## I. BACKGROUND

Plaintiff Royal Indemnity is a Delaware insurance corporation which lawfully conducts insurance business in the State of Utah. Defendants Michael and Kelly Holden are Utah residents engaged in, among other things, the transportation of agricultural and non-agricultural freight for third parties for a fee. Defendant Reed Jacobsen is a Utah resident who is employed by the Holdens as a truck driver from time to time. Defendant David L. Stinson is a Nevada resident and is the administrator of the estate of his deceased wife, Talyha Marie Stinson.[1] The present dispute arises out of a tragic automobile accident and subsequent lawsuit in Clark County, Nevada involving the above parties.

On November 11, 1989, David and Talyha Marie Stinson were traveling eastbound on Nevada state route 160 in their 1986 Toyota pickup truck. At the same time and place, Alcide Carney ("Carney"), while driving westbound in a large tractor-trailer, crossed the center line of state route 160 and struck the Stinsons' vehicle head on. The resulting accident killed Mrs. Stinson and seriously injured her husband David.

Defendant Jacobsen was hauling hay in one of the Holdens' tractor-trailers in route to a dairy farm in Pahrump, Nevada on the day of the Stinson accident.[2] Carney was attempting to pass Jacobsen around a curved portion of state route 160 when the accident occurred. Moreover, Carney has claimed from the day of the accident that, right before the accident, Jacobsen told him over the CB radio that it was safe to pass Jacobsen's truck despite the existence of the curved roadway and Carney's lack of view.[3]

On June 5, 1990, the Stinsons filed suit in the Clark County, Nevada District Court against Carney, Jacobsen, and the Holdens (among others) seeking an undetermined amount of damages arising from the afore-

3. Jacobsen, however, vehemently disputes this allegation.

mentioned facts.[4] Carney and his employer later settled their liability to the Stinsons for $1,000,000.[5] Jacobsen and the Holdens, however, remain defendants in the Nevada action to the present time. Therein lies the genesis of the dispute at bar.

The Holdens were insureds under a general liability insurance policy that was issued by Royal and in effect on the day of the Stinson accident.[6] Moreover, the Holdens' insurance policy contained a provision entitled "Endorsement for Motor Carrier Policies of Insurance Under Sections 29 and 30 of the Motor Carrier Act of 1980" ("ICC endorsement"). The ICC endorsement provided:

> [T]he insurer (the company) agrees to pay within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980.... It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured.

*See* ICC endorsement to Holden Insurance Policy No. RST 094854(02), at 1.[7]

Despite the existence of the aforementioned policy, the Holdens did not notify Royal of their involvement in the Nevada lawsuit until April 23, 1993—or some three years after the Stinson accident occurred. Four months later, on August 20, 1993, Royal noti-

fied the Holdens that it would not defend or indemnify them in the Nevada lawsuit because of the Holdens' delay in notifying Royal about the accident. On that same day, Royal also filed a declaratory judgment action seeking a determination from this court that the Holdens' policy "does not provide coverage or benefits to the defendants for the claims or damages asserted in the Nevada action or arising from the accident described in the Nevada action." *See* Royal's Compl. for Decl. Relief at 5.

Subsequently, on October 22, 1993, the Holdens counterclaimed against Royal for Royal's "breach of contract," "bad faith," and "breach of fiduciary duty" in refusing to defend them in the Nevada lawsuit. *See* Holdens' Answer and Countercl. at 6–8. Soon thereafter, the Stinsons filed their own counterclaim against Royal alleging, among other things, that the ICC endorsement noted *supra* "precludes Royal from relieving itself of its liability" to the Stinsons by operation of law. *See* Stinsons' Answer and Countercl. at 3–4.

On April 21, 1994, the Stinsons filed a motion for partial summary judgment asking this court to order Royal to defend the Holdens in the Nevada action and to indemnify the Stinsons in the event that the Stinsons were to win a judgment against the Holdens. This was followed on May 24, 1994 by Royal's own motion for summary judgment in which Royal again asked the court to hold that the Holdens were not entitled to coverage for the Stinson accident. Finally, on July 1, 1994, the Holdens filed their own motion for partial summary judgment in which they asked the court to hold that Royal, in refusing to defend the Holdens in the Nevada lawsuit, had

---

**4.** *See Stinson et al. v. Carney et al.*, Case No. A285075 (complaint filed June 5, 1990) (on file with the Clark County, Nevada District Court). Neither Mr. Carney nor his employer are parties to the present dispute however.

**5.** Additionally, on August 28, 1990, Carney pled guilty in the Clark County District Court to an amended charge of involuntary manslaughter, a gross misdemeanor, for his role in the Stinson accident.

**6.** Sometime before the Stinson accident, Royal issued to the Holdens its insurance policy no. RST 094854(2) for the period of January 1, 1989 to January 1, 1990.

**7.** In addition, the Holdens' policy contained a "liability coverage" section giving Royal the duty and the right to defend any lawsuit covered by the policy; a section on the Holdens' duties in the event of an accident, claim, suit or loss including (a) a notice clause, and (b) a cooperation clause; and a "no forfeiture" clause.

breached its contractual obligations to the Holdens as a matter of law.[8]

## II. *STANDARD OF REVIEW*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court must construe all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Wright v. Southwestern Bell Tel. Co.,* 925 F.2d 1288, 1292 (10th Cir.1991).

Once the moving party has carried its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Gonzales v. Millers Casualty Ins. Co.,* 923 F.2d 1417, 1419 (10th Cir.1991).[9] The non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552.

In considering whether there exist genuine issues of material fact, the court does not weigh the evidence but instead inquires whether a reasonable jury, faced with the evidence presented, could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Clifton v. Craig,* 924 F.2d 182, 183 (10th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991).[10] Finally, all material facts asserted by the moving party shall be deemed admitted unless specifically controverted by the opposing party. D.Utah R. 202(b)(4).

## III. *DISCUSSION*

The ICC endorsement contained in the Holdens' insurance policy obligates Royal

> to pay within the limits of liability described [in the policy], any final judgment recovered against the [Holdens] for public liability resulting from negligence in the operation, maintenance or use of motor vehicles *subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980.*

*See* ICC endorsement to Holden Insurance Policy No. RST 094854(02), at 1 (emphasis added).[11] The novel issue to be decided here

---

**8.** For the sake of clarity, the court notes that it made several rulings from the bench at the August 19, 1994 hearing on the above motions. The court found that: (1) the Holdens' claims were not barred by Utah's three-year statute of limitation and its "inception of loss" language because no "loss" occurred until Royal denied coverage; (2) all Holden claims dealing with the "bad faith" of Royal in denying coverage were dismissed as a matter of law because Royal's reasons for denying coverage were "fairly debatable"; (3) the Holdens did not "intentionally relinquish" their rights to coverage and therefore no "waiver" occurred as a matter of law; (4) as a matter of law, there was no "collusion" between the Holdens and the Stinsons in failing to notify Royal of the accident such that either would be precluded from recovery under the Holdens' insurance policy; (5) genuine issues of material fact existed with regard to whether Royal was prejudiced by the Holdens' delay in notifying it of the Stinson accident and the Nevada lawsuit, thus precluding summary judgment on that issue; and (6) the policy could not be con-

tested based on the policy exclusion for "concealment, misrepresentation, or fraud" because the Holdens' conduct did to rise to that level.

**9.** The summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553.

**10.** "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512.

**11.** The endorsement also provides that

> no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described,

is whether that endorsement mandates coverage for the Holdens despite the fact that Jacobsen was hauling alfalfa hay, an agricultural product not subject to ICC jurisdiction under the Motor Carrier Act of 1980 ("Motor Carrier Act"), on the day that the Stinson accident occurred.[12]

49 U.S.C.A. § 10526(a)(6) is part of the financial responsibility requirements of sections 29 and 30 of the Motor Carrier Act. It provides, in relevant part:

> § 10526. **Miscellaneous motor carrier transportation exemptions**
>
> (a) The Interstate Commerce Commission does not have jurisdiction under this subchapter over—
>
> (6) transportation by motor vehicle of—
>
> . . . .
>
> (B) *agricultural or horticultural commodities* (other than manufactured products thereof); [or]
>
> . . . .
>
> (E) *livestock and poultry feed* and agricultural seeds and plants, if such products (excluding products otherwise exempt under this paragraph) are transported to a site of agricultural production or to a business enterprise engaged in the sale to agricultural producers of goods used in agricultural production.

*See* 49 U.S.C.A. § 10526(a)(6)(B), (E) (West Supp.1994) (emphasis added). Royal argues that, given section 10526, the Holdens' ICC endorsement cannot be applied to the facts of this case as a matter of law. Royal's argument seems to be this: (1) under section 10526, the ICC lacks jurisdiction over the transportation of agricultural commodities and livestock feed such as hay; (2) Jacobsen was hauling hay in one of the Holdens' tractor-trailers to a Pahrump, Nevada dairy on the day that the Stinson accident occurred;

(3) therefore, as a matter of law, that tractor-trailer was not "subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980" on the Pahrump, Nevada trip, and the ICC endorsement is not applicable here. *See* Mem. of Pl. Royal Indemnity Company in Opp'n to Mot. for Partial Summ.J. of the Holdens at 2–4.

In the court's view, Royal's "trip specific" reading of the Holdens' ICC endorsement (or any ICC endorsement for that matter) is incorrect. Under Section 10927 of the Motor Carrier Act, the ICC can issue an operating permit to a motor carrier only if the motor carrier has filed an adequate "bond, insurance policy, or other type of security . . . in an amount not less than . . . the Secretary of Transportation prescribes." 49 U.S.C.A. § 10927(a)(1) (West Supp.1994). Moreover, ICC regulations require that a motor carrier's surety bond or insurance policy be sufficient "to pay any final judgment recovered against such motor carrier for bodily injuries to or the death of any person resulting from the negligent operation, maintenance or use of motor vehicles subject" to ICC regulation. 49 C.F.R. § 1043.1(a) (1993). Finally, in order to assure compliance with section 10927(a)(1) and 49 C.F.R. § 1043.1(a), the form ICC endorsement at issue here must be included in the insurance policies of all ICC registered carriers. *See Integral Ins. Co. v. Lawrence Fulbright Trucking,* 930 F.2d 258, 261 (2d Cir.1991); *Canal Ins. Co. v. First Gen. Ins. Co.,* 889 F.2d 604, 611 (5th Cir. 1989).[13]

The Tenth Circuit, in *Empire Fire and Marine Ins. Co. v. Guarantee Nat'l Ins. Co.,* 868 F.2d 357 (10th Cir.1989), examined the governmental purpose behind the aforementioned requirements. After giving a "brief overview" of the trucking industry and the events leading up to its regulation, the Tenth Circuit found that *"the purpose of the [ICC]*

---

irrespective of the financial condition, insolvency or bankruptcy of the [Holdens].

**12.** On August 23, 1994 Royal filed a "Motion for Reconsideration of Summary Judgment on Statute of Limitations Issue" asking the court to reconsider its interpretation of the "inception of the loss" language in Utah's three-year statute of limitation for actions on insurance. After carefully considering Royal's motion, and for the

reasons discussed at the August 19, 1994 hearing on this issue, the court feels that its interpretation of the statute was correct, and therefore declines to reconsider its ruling at this time.

**13.** For an illustration of the ICC's form endorsement, called a Form MCS–90, see 49 C.F.R. § 387.15 (1993).

*endorsement was to provide financial protection to members of the public and to shippers." Id.* at 366 n. 13 (emphasis added) (citing *Transamerican Freight Lines, Inc. v. Brada Miller Freight Sys.'s, Inc.,* 423 U.S. 28, 34, 96 S.Ct. 229, 232, 46 L.Ed.2d 169 (1975)). Later courts have also found this same governmental purpose in their analysis of the ICC endorsement requirement. *See, e.g., Canal Ins. Co.,* 889 F.2d at 611 ("[T]he policy embodied in the [financial responsibility] statutes and regulations was to assure that injured members of the public would be able to obtain judgments collectible against negligent authorized carriers."). Moreover, this purpose is found in the ICC's own statements on the issue. *See* Preamble to 49 C.F.R. § 387.1 (1993) ("The purpose of these [financial responsibility] regulations is to create additional incentives to motor carriers to maintain and operate their vehicles in a safe manner and to assure that motor carriers maintain an appropriate level of financial responsibility for motor vehicles operated on public highways.").

Given the above, it would undermine the clear intent of the Motor Carrier Act to hold, as Royal argues here, that the Stinsons are not protected in this case merely because Jacobsen was hauling hay on the day that the accident occurred. For example, had Jacobsen been hauling manufactured goods on the Pahrump, Nevada trip, then Royal would apparently concede that the endorsement would apply in this case. Yet it is totally fortuitous that Jacobsen happened to be hauling hay on the day of the accident instead of some other product not listed in section 10526. Application of the endorsement should not depend on whether Jacobsen was hauling one particular type of product on the day of the accident instead of another. Such an application would not advance the public policy goals of the Motor Carrier Act in protecting the general public, and it also would defy common sense. *See Magann Equip., Inc. v. Buffkin,* 238 Va. 712, 385 S.E.2d 619, 622 (1989) ("[B]ecause the

endorsement is such an integral part of the ICC regulatory scheme, selective application of the endorsement ... would not satisfy the requirements of *Brada.*").

Moreover, the result Royal argues for in this case overlooks the fact that, while the Holdens were perhaps not required to have an ICC endorsement for the particular trip at issue here, nothing in section 10526 prevented them from voluntarily purchasing the endorsement for their hay-hauling trips if they so desired. *Cf. Fawley Motor Lines, Inc. v. Cavalier Poultry Corp.,* 235 F.2d 416, 418 (4th Cir.1956) ("The owner of a motor vehicle may use it for the purpose of transporting agricultural commodities in interstate commerce without obtaining a certificate of convenience and necessity ... or complying with any other provisions of the act; *but there is nothing in this exemption which forbids common carriers hauling agricultural commodities ... to cover such hauling*" should they decide to comply with the Interstate Commerce Act.).

Accordingly, the court finds that once issued, bought, and paid for, the Holdens' ICC endorsement, and the public policy upon which it was based, provided coverage in this case—regardless of the type of product that Jacobsen was hauling on the day of the accident in question. *See Transport Indem. Co. v. Paxton Nat'l Ins. Co.,* 657 F.2d 657, 659 (5th Cir.1981), *cert. denied,* 455 U.S. 982, 102 S.Ct. 1490, 71 L.Ed.2d 692 (1982) ("ICC policy factors are frequently determinative where protection of the public or a shipper is at issue."). Therefore, Royal must defend the Holdens in the Nevada action and indemnify the Stinsons for any recovery they ultimately recover against the Holdens as a result of that lawsuit.[14]

## IV.  *ORDER*

For the foregoing reasons, and good cause appearing, IT IS HEREBY ORDERED AS FOLLOWS:

---

**14.** In footnote 8 *supra,* the court noted that genuine issues of material fact existed with regard to whether Royal has been prejudiced by the Holdens' delay in notifying it of the Stinson accident and the Nevada lawsuit. Because of the disposition of the "ICC endorsement" issue in this memorandum decision and order, however, that issue is now moot and cannot defeat coverage in this case.

1. Royal's motion for summary judgment is hereby denied.

2. The Holden Defendants' motion for partial summary judgment on the "ICC endorsement" issue is hereby granted.

3. The Stinson Defendants' motion for partial summary judgment on the "ICC endorsement" issue is hereby granted.

DATED this 23rd day of September, 1994.