673 So.2d 89 (1996)
John H. BRANSON and his wife, June Branson, Appellants,
v.
MGA INSURANCE COMPANY, INC., etc., Appellee.
No. 95-1323.
District Court of Appeal of Florida, Fifth District.
April 12, 1996.
Rehearing Denied May 9, 1996.
John H. Piccin and Victor J. Musleh, Jr., of John H. Piccin, P.A., Ocala, for Appellants.
Jennifer C. Cates and Dudley D. Birder, Jr., of Monaco, Monaco & Birder, Gainesville, for Appellee.
GRIFFIN, Judge.
This is the appeal of a summary final judgment entered in favor of MGA Insurance Company ["MGA"] on the claim of John and June Branson that MGA is liable to pay a judgment obtained by the Bransons against MGA's putative insured, Coastwise Transport Limited ["Coastwise"]. Because we conclude there was no coverage for the accident in question, we affirm.[1]
MGA's insurance policy issued to Coastwise was declared void ab initio in litigation between these two parties in the Western District of Louisiana, but BMC 91X, a certificate of insurance filed by MGA, was left unaffected by the express terms of that judgment. The key issue is whether, assuming there is coverage under the ICC endorsement, this coverage extends to an accident caused by a vehicle under lease to Coastwise which, at the time of the accident, was engaged in a purely intrastate trip and was carrying cargo (potatoes) expressly exempted from ICC jurisdiction.
On August 31, 1988, a Florida truck brokerage company, Rose Truck Brokers ["Rose"], needed a shipment of potatoes delivered for Mid-State Potato Distributors, Inc. from Mid-State's main office in Plant City, Florida, to a Winn-Dixie in Jacksonville, Florida. The vehicle utilized by Rose had been leased by James Cambron under a *90 lease-purchase agreement with the broker. A complicated set of additional leases or subleases appears to have left Coastwise as the sublessee on the date of the accident. Rose either contacted or was contacted by Cambron to transport the load of potatoes. While en route, the accident occurred in Putnam County. Reduced to basics, the Bransons' argument is that the subject truck was a truck that engaged in interstate commerce and the fact that the particular trip was intrastate and the load exempt from ICC regulation is of no moment. The Bransons urge that the insurance coverage provided by the ICC endorsement cannot be "trip specific."
Since the federal Motor Carrier Act was first passed in 1935, Congress has directed that motor carriers be required to produce proof of adequate security in order to receive the authorization necessary to operate in interstate commerce under the jurisdiction of the ICC. This directive is currently codified at 49 U.S.C. § 10927(a)(1).[2] The statute instructs the ICC that the security must be "sufficient to pay, not more than the amount of the security, for each final judgment against the carrier for bodily injury to, or death of, an individual resulting from the negligent operation, maintenance, or use of motor vehicles under the certificate or permit, or for loss or damage to property...." Id. (emphasis added). This court is faced with the determination of when a motor vehicle is "under the certificate or permit." The answer is found by examining both the general structure of the interstate commerce statutes and the ICC's regulations.
Title 49, subtitle IV of the United States Code, known as the Revised Interstate Commerce Act, provides for, among other things, the existence, jurisdiction, power and the responsibilities of the ICC. Chapter 105 specifically sets out the Commission's jurisdiction. Subchapters I, II, III and IV, respectively, set out the ICC's jurisdiction over rail carriers, motor carriers, water carriers and freight forwarder services. Most important for purposes of this analysis is subchapter II, which governs motor carrier jurisdiction.
Subchapter II begins with a statement of the ICC's general jurisdiction over motor carriers. 49 U.S.C. § 10521. The statute grants the ICC jurisdiction:
over transportation by motor carrier ... to the extent that passengers, property, or both, are transported by motor carrier
(1) between a place in
(A) a State and a place in another State;
(B) a State and another place in the same State through another State;
(C) the United States and a place in a territory or possession of the United States to the extent the transportation is in the United States;
(D) the United States and another place in the United States through a foreign country to the extent the transportation is in the United States; or
(E) the United States and a place in a foreign country to the extent the transportation is in the United States; and
(2) in a reservation under the exclusive jurisdiction of the United States or on a public highway.
49 U.S.C. § 10521(a). Section 10521 does not grant the ICC jurisdiction over purely intrastate transportation. See 49 U.S.C. § 10521(b); Merchants Fast Motor Lines, Inc. v. ICC, 5 F.3d 911, 916 (5th Cir.1993); Central Freight Lines v. ICC, 899 F.2d 413, 424 (5th Cir.1990) (citing former version of statute); 13 C.J.S. Carriers § 52 (1990). Sections 10522, 10523, 10524, 10525 and 10526 all denote exceptions to the ICC's jurisdiction, including section 10526(a)(6)(B), which exempts the ICC's jurisdiction under subchapter II over "transportation by motor vehicle of agricultural or horticultural commodities."
Apparent from subchapter II's structure is that whether the ICC has jurisdiction in a given instance is determined by an examination of the particular transportation. *91 Section 10921, for example, states the requirement that "a person may provide transportation or service subject to the jurisdiction of the Interstate Commerce Commission under subchapter II, III, or IV of chapter 105 ... only if the person holds the appropriate certificate, permit or license...." 49 U.S.C. § 10921. Here a person is only required to hold the appropriate authorization when the person is providing transportation or service. Also similar is section 11107, which regulates motor carrier leases. Under that section, the ICC "may require a motor carrier providing transportation subject to the jurisdiction of the Commission under subchapter II of chapter 105 of [Title 49] that uses motor vehicles not owned by it" to perform certain requirements relating to leases. 49 U.S.C. § 11107(a) (emphasis added). Again, the ICC's authority is not perpetualit exists where a motor carrier is providing certain types of transportation. This is followed throughout the remainder of the Revised Act.
The ICC enforces section 10927(a)(1) through 49 C.F.R. § 1043.1(a). That subchapter defines the ICC's jurisdiction relative to the activity of a motor carrier depending on whether a motor carrier is conducting certain types of interstate transportation. Therefore, the insurance required by the Interstate Commerce Commission under section 1043.1(a), which is to cover the "negligent operation, maintenance or use of motor vehicles in transportation subject to Subchapter II," extends only to a motor carrier "in transportation" that is subject to the jurisdiction of the ICC under Title 49, chapter 105, subchapter II. If the motor carrier is not engaged in transportation that is within such jurisdiction, then there is no coverage under the ICC-mandated insurance.
MGA and the Bransons each direct this court's attention to cases that have addressed the question of ICC-required insurance being potentially inapplicable due to such jurisdictional issues. First, in Ford Motor Co. v. Transport Indem. Co., 795 F.2d 538 (6th Cir.1986), the Sixth Circuit addressed the argument of an insurer, TICO, that it could not be liable for damages caused to cargo it had insured under an ICC-required policy where the claims arose from damage that allegedly occurred solely in intrastate commerce and in an exempt commercial zone under 49 U.S.C. § 10526(b)(1) (1982). TICO had raised these defenses in the district court, but that court found them to be affirmative defenses which had been waived when TICO failed to assert them until over three years into the litigation. On appeal, the circuit court held:
A similar situation is presented by TICO's defense that it is not liable for those damage claims which fall outside the coverage of the B.M.C. 32 endorsement, specifically, those claims arising from damage which occurred solely in intrastate commerce and in exempt zones, see 49 U.S.C. § 10526(b)(1) (1982). It is axiomatic that for Ford to recover under the B.M.C. 32 endorsement the endorsement by its terms must be applicable to the transaction; if TICO can establish that a claim falls outside the coverage of the B.M.C. 32 endorsement, Ford will be unable to establish its prima facie case. By definition, therefore, TICO's defense is not an affirmative one. Also, Ford will not have to engage in supplementary discovery to meet this defense since Ford should be well aware from its own records where the damages were incurred and the details of the transactions underlying its claims. Accordingly, we hold that TICO's defense that some of the claims fall outside of the scope of the B.M.C. 32 endorsement is not an affirmative defense within the definition of Rule 8(c) and, accordingly, on remand, TICO should be given an opportunity to establish this defense.
Id. at 547. Although the BMC 32 form differs somewhat from the MCS 90 endorsement utilized in this case by MGA and Coastwise, Ford is suggestive that coverage follows jurisdiction.
The Bransons rely on Royal Indem. Co. v. Jacobsen, 863 F.Supp. 1537 (D.Utah 1994). There, Royal Indemnity Company ["Royal"] filed a declaratory judgment action to determine whether the ICC-required liability policy it issued (an MCS 90 endorsement) covered damages caused in an accident involving Royal's insured, a motor carrier, although the motor carrier was plainly engaged in interstate commerce at the time (a trip between Nevada and Utah). Royal filed a motion *92 for summary judgment based in part on the fact that its insured, at the time of the accident, was hauling hay, an agricultural product exempt from ICC jurisdiction under 49 U.S.C. § 10526(a)(6). Addressing this issue, the district court found the purpose of the mandatory ICC insurance was to "assure that injured members of the public would be able to obtain judgments collectible against negligent authorized carriers." Jacobsen, 863 F.Supp. at 1542 (quoting Canal Ins. Co. v. First Gen. Ins. Co., 889 F.2d 604, 611 (5th Cir.1989)). The court then quoted the preamble to 49 C.F.R. § 387.1, which addresses the Department of Transportation's insurance requirements for motor carriers, and identified it as "the ICC's own statement[] on the issue." Jacobsen, 863 F.Supp. at 1542. The court expressed its view that it was "totally fortuitous" that the trucker happened to be hauling hay that particular day and held that "once issued, bought and paid for, the ... ICC endorsement, and the public policy upon which it was based, provided coverage in this caseregardless of the type of product that Jacobsen was hauling on the day of the accident in question." Id. To hold otherwise, according to Jacobsen, "would undermine the clear intent of the Motor Carrier Act...." Id.
MGA distinguishes Jacobsen on the basis that the carrier was engaged in interstate commerce and that the court relied on the existence of both the underlying policy as well as the ICC endorsement in holding the insurer liable. The opinion, however, clearly reflects the view of the federal district judge in Jacobsen that a finding of coverage should be based on the public policy of protecting the motoring public. We recognize the holding of Jacobsen but are not persuaded by it. The statutes and federal regulations direct us to the conclusion that the coverage afforded specifically by an ICC endorsement does not apply to a purely intrastate haul of products over which the ICC expressly has no jurisdiction.
AFFIRMED.
GOSHORN and THOMPSON, JJ., concur.
NOTES
[1] In order to reach the issue mainly relied on by the lower court in entering summary judgment, and principally argued by the litigants on appeal, we necessarily pass certain other issues which likely also would support the summary judgment in favor of MGAmost notably the fact that the judgment the Bransons are attempting to collect was entered in apparent violation of an automatic stay in the Coastwise bankruptcy.
[2] Unless otherwise noted, the statutes and regulations hereafter cited are those current as of 1995 and are not materially different from those in effect in 1988, the year of the Bransons' accident.