3 P.3d 1046

Thomas ROBERTSON, an unmarried man, Plaintiff–Appellant,

v.

MOTOR CARGO, INC., a Utah corporation, Defendant–Appellee.

Nos. 1 CA–CV 97–0395, 1 CA–CV 98–0186.

Court of Appeals of Arizona, Division 1, Department A.

Nov. 30, 1999.

Review Granted May 23, 2000.

Jensen Law Firm, P.C. by Christopher W. Jensen, Prescott, for Appellant.

Holloway, Odegard & Sweeney, P.C. by Sally A. Odegard, Charles M. Callahan, Peter C. Kelly II, Phoenix, for Appellee.

## OPINION

GERBER, Judge.

¶ 1 The question before us is whether a motor carrier that leased equipment and services from an independent trucking company incurs liability for injuries to a third party due to the negligence of the motor carrier's driver.

## FACTS AND PROCEDURAL HISTORY

¶ 2 We view the facts in the light most favorable to appellant Thomas Robertson, against whom summary judgment was entered. *State ex rel. Corbin v. Challenge, Inc.,* 151 Ariz. 20, 24, 725 P.2d 727, 731 (App.1986). Appellee Motor Cargo, Inc. (Motor Cargo), a trucking company that transports freight, engages other companies, known as cartage companies, to transport freight from Motor Cargo to its consignors and consignees.

¶ 3 Under such a cartage agreement, Kifsco, Inc. (Kifsco) performed transport services for Motor Cargo in Coconino, Yavapai, and Navajo counties. Kifsco used both tractors it owned and trailers owned by Motor Cargo to transport freight at Motor Cargo's request. Motor Cargo's Interstate Commerce Commission (ICC) placards affixed to both Kifsco's tractors and Motor Cargo's trailers identified the equipment as operating under Motor Cargo's ICC registration number.

¶ 4 Craig Wolsey, the sole shareholder of Kifsco, had formed Northern Arizona Pallets (NAP) to enable Kifsco's manager, Ron Wolsey, to supplement his income. NAP operated from Kifsco's terminal in Flagstaff, sharing a phone line and equipment with Kifsco. When Kifsco delivered freight for Motor Cargo to a consignee, the pallets carrying the freight became property of the consignee. NAP either purchased pallets from consignees for $1.00 each or received them free in exchange for hauling them away. Motor Cargo knew that NAP/Kifsco used Motor Cargo's trailers to ship pallets. NAP sent unbroken pallets back to Motor Cargo for shippers requesting their return.

¶ 5 In June 1993, Molly Shultz, a Kifsco driver preparing to leave its yard in Flagstaff to make a delivery to Ace Hardware in Prescott Valley for Motor Cargo, was asked by Polo Castro, an employee of NAP, to deliver 100 pallets to Western States Stone (Western States) in Ashfork. Shultz agreed to do so. Castro loaded the pallets onto Shultz's trailer along with the freight destined for Ace Hardware. Shultz did not inspect the trailer to make sure the pallets were loaded safely.

¶ 6 The pallets shifted during the drive and fell against the trailer doors. When Robertson, a Western States employee, opened the doors, the pallets fell out and injured him.

¶ 7 Robertson sued Kifsco, Motor Cargo, Wolsey dba NAP, Castro, and Shultz. In its motion for summary judgment, Motor Cargo denied any actual or implied agency relationship with Kifsco and argued it had never authorized Castro, Schultz, Wolsey, or NAP to act on its behalf to deliver pallets to Western States and also denied knowledge of that transaction.

¶ 8 Robertson replied that because Kifsco and Motor Cargo enjoyed an agency relationship under the cartage agreement and the negligence of Kifsco's employee caused Robertson's injury, Motor Cargo, as principal, was vicariously liable. He also argued that public policy supported a finding of actual agency because ICC trucking regulations held Motor Cargo liable for using its agent Kifsco to deliver freight under Motor Cargo's directions. Robertson also argued that Motor Cargo was estopped from denying an agency relationship because its own placards were affixed on the Kifsco tractor and trailer that delivered the pallets. He concluded that Kifsco had an implied agency relationship

with Motor Cargo as to the pallet business because Motor Cargo allowed Kifsco/NAP to use its trailers to transport and deliver them.

¶ 9 The trial court granted Motor Cargo's motion for summary judgment and denied Robertson's cross-motion. It explained that Robertson had not presented facts sufficient to support alter ego, vicarious liability, or partnership theories against Motor Cargo. The liability of Kifsco was determined by default. The jury found Robertson's damages to be $315,138, with Kifsco 100% at fault. The trial court entered a judgment on the jury verdict and a second judgment in favor of Motor Cargo.

¶ 10 Robertson timely appealed from the trial judgment and from the denial of his cross-motion for summary judgment. He also filed a motion to set aside the summary judgment on the grounds of fraud and misconduct under Rule 60(c)(1), (3) and (6), Arizona Rules of Civil Procedure. This court suspended the appeal and revested jurisdiction in the trial court to consider the Rule 60(c) motion, which the trial court denied, prompting this appeal. Upon motion by Robertson, we consolidated the two appeals.

## DISCUSSION

### A. Issues

¶ 11 On appeal, Robertson raises two primary issues: First, did the trial court err in ruling that neither Arizona nor Interstate Commerce Commission (ICC) law makes Motor Cargo vicariously liable for his injuries? Second, did the trial court err in concluding that the theory of apparent agency excused Motor Cargo from liability for Robertson's injuries? We need to address only the first of these issues.

### B. Motor Cargo's Alleged Liability for Robertson's Injuries Under ICC Law

#### 1. Did Robertson Raise This Issue Below?

¶ 12 Robertson now argues that under both Arizona and ICC law, a truck driver is irrebuttably presumed to be the employee of the motor carrier whose ICC placards he

manifests. Therefore, Robertson contends, because Shultz was driving a Kifsco truck with Motor Cargo placards when Robertson was injured, she was an employee of Motor Cargo, which thereby becomes liable for her negligence.

¶ 13 Motor Cargo first replies that Robertson failed to raise this vicarious liability theory in the trial court and thus waived this argument on appeal. Our examination of the record reveals that Robertson did in fact raise the issue. His response to Motor Cargo's motion for summary judgment and his own cross motion for partial summary judgment noted that the tractor and trailer driven by Shultz bore placards displaying Motor Cargo's logo and ICC numbers and that the public policy underlying the ICC regulations would be served by preventing Motor Cargo from escaping liability. He cited two cases from the Ninth Circuit Court of Appeals in which the carrier-lessees were found to be the statutory employers of the negligent drivers under ICC regulations. His reply in support of his cross motion for summary judgment reiterated his policy argument and noted that the United States Supreme Court had held motor carriers vicariously liable for damages caused by trucks showing their placards. He then argued:

Even the Arizona Supreme Court has held that the presence of placards on the tractor/trailer is a basis of vicarious liability for the carrier named on the placard, based upon federal law and ICC regulations. *Transport Indem. Co. v. Carolina Cas. Ins.*, 133 Ariz. 395, 397, 652 P.2d 134, 136 (1982). *Transport Indemnity* cites *Brannaker v. Transamerican Freight Lines, Inc.*, 428 S.W.2d 524 (Mo.1968), *Cox v. Bond Transportation, Inc.*, 53 N.J. 186, 249 A.2d 579 (1969), and *Mellon National Bank & Trust Co. v. Sophie Lines, Inc.*, 289 F.2d 473, 477 (3d Cir.1961), "holding that federal law creates an *irrebuttable presumption* that the lessor's driver is the employer [sic—employee] of the vehicle [sic—lessee] whose placards identify the vehicle." [Emphasis added]. Therefore, despite Motor Cargo's protestations, Arizona law, by analogy, requires a finding of implied agency because of the *undisputed*

evidence of Motor Cargo's placards on the negligently loaded trailer.

¶ 14 We conclude that these written arguments and citations sufficiently raised the ICC issue in the trial court.

## 2. Does ICC Law Place Liability for Robertson's Injuries on Motor Cargo?

¶ 15 We turn now to the question of vicarious liability. The Arizona Supreme Court in *Transport Indemnity Co. v. Carolina Casualty Insurance Co.*, 133 Ariz. 395, 652 P.2d 134 (1982), considered ICC regulations bearing on the tort liability of an ICC-licensed interstate carrier leasing a tractor, trailer, and driver from an independent trucker. The Interstate Commerce Act provides that the ICC may prescribe regulations " 'reasonably necessary in order to insure that while motor vehicles are being ... used [under lease] the motor carriers will have full direction and control of such vehicles and *will be fully responsible* for the operation thereof ... *as if they were the owners* of such vehicles....' " *Id.* at 397, 652 P.2d at 136 (quoting 49 U.S.C. § 304(e)) [1] (emphasis added in *Transport Indemnity*). The court also noted that ICC regulations mandate that leases provide that the lessee have exclusive possession, control and use of the equipment and complete responsibility for it.

¶ 16 The intent of this law, said *Transport Indemnity*, is "to prevent the operation of unregulated, uninsured or underinsured vehicles on interstate trips by imposing responsibility for operation of trip-leased vehicles on the lessee holding the ICC certificate of convenience and necessity." *Id.* Congress in effect made the driver of the leased unit a statutory employee of the lessee: "federal law creates an irrebuttable presumption that the lessor's driver is the employee of the lessee whose placards identify the vehicle." *Id. See also Zamalloa v. Hart*, 31 F.3d 911, 914 (9th Cir.1994) (under ICC requirements, carrier becomes statutory employer of lessor's driver); *Wilson v. Riley Whittle, Inc.*, 145 Ariz. 317, 321, 701 P.2d 575, 579 (App. 1984) (federal law creates irrebuttable presumption that lessor is employee of the motor carrier).[2]

¶ 17 The cartage agreement provides that Kifsco is to protect and indemnify Motor Cargo against all loss that Motor Cargo might incur for injury to persons caused by negligent acts of Kifsco or its agents, servants, or employees. This type of indemnification agreement acknowledges Motor Cargo's responsibility for negligent acts of Kifsco and its employees.

¶ 18 Motor Cargo next argues that, notwithstanding the cited ICC law, it is not liable to Robertson under *respondeat superior* because Shultz was acting outside the course and scope of her employment with .

1. This statute is now codified at 49 U.S.C. § 14102, which provides:

   (a) **General authority of Secretary.** The Secretary may require a motor carrier providing transportation subject to jurisdiction under subchapter I of chapter 135 that uses motor vehicles not owned by it to transport property under an arrangement with another party to—
   (1) make the arrangement in writing signed by the parties specifying its duration and the compensation to be paid by the motor carrier;
   (2) carry a copy of the arrangement in each motor vehicle to which it applies during the period the arrangement is in effect;
   (3) inspect the motor vehicles and obtain liability and cargo insurance on them; and
   (4) have control of and be responsible for operating those motor vehicles in compliance with requirements prescribed by the Secretary on safety of operations and equipment, and with other applicable law as if the motor vehicles were owned by the motor carrier.

   Leasing regulations adopted pursuant to this statute are found at 49 C.F.R. §§ 1057.11 and 1057.12. Section 1057.12(c)(1) reads:
   The lease shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease.

2. The agreement between Motor Cargo and Kifsco conflicts superficially with this law by providing that persons employed by Kifsco to perform services under the agreement remain employees of Kifsco, which itself remains an independent contractor in the performance of the contract. However, the agreement also provides that any contractual provision that violates a statute, ordinance, or rule is "null, void, and of no effect." Therefore, given this language, the agreement does not supersede the ICC regulations.

Kifsco by transporting NAP pallets to Western States. We disagree for two reasons. First, the jury's finding that Kifsco was 100 percent liable for Robertson's injury and that Ron Wolsey was not at fault necessarily implies that Shultz was acting in the course and scope of her employment with Kifsco when she transported the pallets.

¶ 19 Second, we question the continued validity of the statement from *Wilson* that "[u]nder the Federal statutes and regulations the liability of the trucking company is no greater than that which exists under the doctrine of respondeat superior." 145 Ariz. at 321, 701 P.2d at 579. *Wilson* cited *Wilcox v. Transamerican Freight Lines,* 12 Ohio Misc. 162, 371 F.2d 403 (6th Cir.1967), *cert. denied,* 387 U.S. 931, 87 S.Ct. 2053, 18 L.Ed.2d 992 (1967), as support for that statement. Several federal circuit courts, including the Ninth Circuit, have reached conclusions contrary to *Wilcox.*

¶ 20 *Planet Insurance Co. v. Transport Indemnity Co.,* 823 F.2d 285, 288 (9th Cir. 1987), decided that the federal regulatory schemes "do not require that covered losses occur while the driver is in the scope of employment or acting under common-law principles or vicarious liability." It concluded that state standards of *respondeat superior* did not apply and that it was unnecessary to make findings about whether the driver was acting in the scope of employment with the lessee. Once the trip lease went into effect, said the court, the lessee and its insurer became responsible for any negligence of the lessor.

¶ 21 Similarly, *Rodriguez v. Ager,* 705 F.2d 1229, 1236 (10th Cir.1983), held that even though the driver was not on a delivery for the carrier lessee when the accident occurred, the ICC licensed carrier became responsible as a matter of law for injuries sustained in the accident. In rejecting the holding in *Wilcox,* it noted that *Wilcox* ignored ICC policies and governing authority.

¶ 22 The Fifth Circuit also follows the rule that ICC regulations "preempt state law in tort actions in which a member of the public is injured by the negligence of a motor carrier's employee while operating an interstate carrier vehicle." *Price v. Westmoreland,* 727 F.2d 494, 496 (5th Cir.1984). *Price* held the ICC licensed carrier responsible for injuries suffered by an unauthorized passenger in the leased vehicle, noting that " 'the ICC carrier's liability for equipment and drivers covered by leasing arrangements is not governed by the traditional common law doctrine of master-servant relationships and respondeat superior' " and thus the carrier became vicariously liable as a matter of law for the negligence of the driver. *Id.* (quoting *Simmons v. King,* 478 F.2d 857, 867 (5th Cir. 1973)); *see also Wellman v. Liberty Mut. Ins. Co.,* 496 F.2d 131, 136 (8th Cir.1974) (unauthorized trip was subject to carrier's control and carrier was vicariously liable for injuries to third parties); *Mellon Nat'l Bank & Trust Co. v. Sophie Lines, Inc.,* 289 F.2d 473, 477 (3rd Cir.1961) (carrier responsible for leased truck even when used for an unauthorized delivery for a third party).

¶ 23 These federal cases reflect the policy "requiring the lessee of a vehicle … to assure responsibility for the accidents of the driver of the vehicle which displays its insignia." *Rodriguez,* 705 F.2d at 1236. From these cases, we conclude that Motor Cargo is liable for the injuries suffered by Robertson and caused by Kifsco.[3]

### 3. Does the Pallet Exemption Apply?

¶ 24 Motor Cargo next argues that ICC laws do not apply to impose liability on it because the ICC lacks jurisdiction over the transportation of used pallets. 49 United States Code ("U.S.C.") section 13506(a)(11) provides that "[n]either the Secretary nor the Board has jurisdiction under this part

---

**3.** Motor Cargo argues that an ICC ruling, *Lease and Interchange of Vehicles (Identification Devices),* 3 ICC 2d 92 (1986), has determined that state tort, contract, and agency law should apply to determine carrier liability. We note, however, that this ruling concerns liability of carriers when equipment owners continue to display the

carrier's identification placard on equipment *after* termination of the lease. There is no dispute here that the agreement between Motor Cargo and Kifsco was in effect at the time Robertson was injured. Therefore, the ruling does not control here.

over transportation of used pallets and used empty shipping containers. . . ."

¶ 25 Two federal cases address the effect of shipping an exempt commodity along with non-exempt items. In *Vance Trucking Co. v. Canal Insurance Co.*, 249 F.Supp. 33, 39 (D.S.C.1966), *aff'd*, 395 F.2d 391 (4th Cir. 1968), *cert. denied*, 393 U.S. 845, 89 S.Ct. 129, 21 L.Ed.2d 116 (1968), the court rejected the contention that the lessee escaped ICC regulations because the negligent driver was hauling an exempt commodity. *Vance* held that regulations governing the use of leased vehicles applied without regard to the commodity being hauled because ICC regulations "are not designed to excuse a party from liability which he might otherwise have." *Id.*

¶ 26 Similarly, *Royal Indemnity Co. v. Jacobsen*, 863 F.Supp. 1537, 1542 (D.Utah 1994), dealing with an ICC endorsement in the motor carrier's insurance policy for a truck containing an exempt agricultural product, found liability regardless of the type of product being hauled. *Jacobsen* noted that ICC regulations seek to protect the public and shippers from negligent carriers. It concluded that finding an exemption for hauling hay would undermine the intent of the Motor Carrier Act:

Application of the endorsement should not depend on whether Jacobsen was hauling one particular type of product on the day of the accident instead of another. Such application would not advance the public policy goals of the Motor Carrier Act in protecting the general public, and it also would defy common sense.

*Id.*

¶ 27 We agree with *Vance Trucking* and *Jacobsen*. In making the ICC licensed carrier responsible for negligence of the agent, Congress sought to ensure that the public and shippers be protected in trucking accidents involving any covered products even if combined with exempt items. *See, e.g., Transamerican Freight Lines Inc. v. Brada Miller Freight Systems, Inc.*, 423 U.S. 28, 37, 96 S.Ct. 229, 46 L.Ed.2d 169 (1975) (aim of rules is to fix financial responsibility for damages and injuries to shippers and public); *Zamalloa*, 31 F.3d at 913 (ICC laws enacted by Congress to protect public by preventing

common carriers from evading liability for accidents caused by drivers); *Price*, 727 F.2d at 496 (to protect public from tortious conduct of judgment-proof operators of interstate motor carrier vehicles, law requires motor carrier to assume full direction and control of leased vehicles). To allow Motor Cargo to escape liability merely because the lessor Kifsco added pallets along with regulated items defeats the policy goals of ICC regulations. We conclude that the transport of the pallets does not excuse Motor Cargo from liability under ICC law.

### 4. Was the Trip Solely in Intrastate Travel?

¶ 28 Motor Cargo next argues that the ICC regulations do not apply at all because the trip to Prescott Valley involved an intrastate rather than interstate shipment. 49 U.S.C. section 13501 concerning general jurisdiction provides:

The Secretary and the Board have jurisdiction, as specified in this part, over transportation by motor carrier and the procurement of that transportation, to the extent that passengers, property, or both, are transported by motor carrier—

(1) between a place in—

(A) a State and a place in another State;

(B) a State and another place in the same State through another State;

(C) the United States and a place in a territory or possession of the United States to the extent the transportation is in the United States;

(D) the United States and another place in the United States through a foreign country to the extent the transportation is in the United States; or

(E) the United States and a place in a foreign country to the extent the transportation is in the United States; and

(2) in a reservation under the exclusive jurisdiction of the United States or on a public highway.

¶ 29 The ICC threshold is interstate shipment. The power of the ICC "to exercise jurisdiction over a carrier's employees is limited to 'activities [which] directly affect the safety of operation * * * in interstate * * * commerce.'" *Baird v. Wagoner Transp. Co.,* 425 F.2d 407, 412–13 (6th Cir.1970) (citation omitted). Similarly, the ICC's rate and rule-making authority over motor carriers extends solely to interstate transportation. *In re Grand Jury Subpoena Duces Tecum Issued to Southern Motor Carriers Rate Conf., Inc., Dated August 13, 1975,* 405 F.Supp. 1192, 1195 (N.D.Ga.1975). The coverage afforded specifically by an ICC endorsement does not apply to purely intrastate transport. *Branson v. MGA Ins. Co., Inc.,* 673 So.2d 89, 92 (Fla.App.1996).

¶ 30 A carrier engages in interstate commerce affecting Arizona when it transports goods that originate from beyond Arizona or are destined beyond Arizona. *See Merchants Fast Motor Lines, Inc. v. Interstate Commerce Comm'n,* 528 F.2d 1042, 1044 (5th Cir.1976). Interstate travel occurs even if the route of a particular carrier in the overall interstate trip is wholly within one state. *Id.*

¶ 31 Accordingly, Motor Cargo and Kifsco engaged in interstate commerce if the Ace Hardware products carried by Kifsco for Motor Cargo originated in a state other than Arizona. Under 49 U.S.C. section 13501, we look to the transport origin to determine whether ICC jurisdiction applies. If the cargo hauled by Kifsco to Ace had been first transported in a state other than Arizona, Motor Cargo/Kifsco then would have engaged in interstate commerce during the trip to Ashfork/Prescott Valley.

¶ 32 Robertson speculates that the cargo bound for Ace Hardware originated in New Mexico, a possibility repeated in oral argument. The record is silent about this possibility. However, given the fact that the products destined for Ace Hardware, a national chain, could not reasonably have been manufactured in their entirety exclusively in northern Arizona where the trip originated, we take judicial notice that at least some of the products shipped to Ace had to originate in states outside Arizona. In *Daniel v. Paul,*

395 U.S. 298, 305, 89 S.Ct. 1697, 23 L.Ed.2d 318 (1969), the Supreme Court sanctioned a similar exercise of judicial notice:

> The District Court took judicial notice of the fact that the "principal ingredients going into the bread were produced and processed in other States" and that "certain ingredients [of the soft drinks] were probably obtained ... from out-of-State sources." 263 F.Supp., at 418. Thus, at the very least, three of the four food items sold at the snack bar contain ingredients originating outside of the State. There can be no serious doubt that a "substantial portion of the food" served at the snack bar has moved in interstate commerce.

¶ 33 Based on this judicial notice, we conclude that the shipment to Ace Hardware involved at least some products originating in other states. The shipment thus falls under ICC regulations affecting interstate commerce. In the event that counsel possess clear evidence to the contrary, this issue may be re-litigated in the trial court. In the absence of such evidence, we conclude that ICC interstate regulations govern.

## CONCLUSION

¶ 34 We reverse the trial court's grant of summary judgment in favor of Motor Cargo and remand for entry of summary judgment holding Motor Cargo liable for Robertson's injuries caused by Kifsco.

CONCURRING: NOEL FIDEL, Judge, and SARAH D. GRANT, Judge.